UNITED STATES of America,
Plaintiff-Appellee,

v.

Edward BALDARRAMA, Matias G. Segarra and Felix Bensor, Defendants-Appellants.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Gilbert Casas GUZMAN,
Defendant-Appellant.

Nos. 76–3625 and 77–5265.

United States Court of Appeals,
Fifth Circuit.

Jan. 20, 1978.
Rehearing Denied March 17, 1978.

Lucien B. Campbell, Federal Public Defender, P. Joseph Brake, Asst. Fed. Public Defender, San Antonio, Tex., for Segarra.

Joe L. Hernandez, San Antonio, Tex., for Bensor.

Donald J. Walheim, San Antonio, Tex. (Court-appointed), for Baldarrama.

Jamie C. Boyd, U. S. Atty., LeRoy Morgan Jahn, Robert S. Bennett, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Neill Boldrick, Jr., and Allan K. DuBois (Court-Appointed), San Antonio, Tex., for defendant-appellant.

Gilbert Casas Guzman, pro se.

Before WISDOM, GEWIN and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Defendants appeal from convictions of conspiracy, aiding and abetting, and possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846. Defendants Baldarrama, Segarra, Bensor and Guzman were found guilty of conspiring to distribute heroin. Each of the remaining five counts of the indictment charged Segarra with possession with intent to distribute and one of the other defendants with aiding and abetting such possession. Baldarrama was convicted of aiding and abetting Segarra on three separate counts; Bensor and Guzman on one each.

Bensor and Guzman contend that the evidence was insufficient to support the aiding and abetting convictions. Baldarrama, Bensor and Guzman allege that there was insufficient evidence to uphold their convictions of a single conspiracy including all four defendants. Defendants unanimously claim that the admission of Guzman's prior heroin conviction was prejudicial error. Baldarrama avers that prejudicial error resulted from the trial court's failure to grant a severance after the court ruled that Guzman's prior heroin conviction could be admitted at trial. Defendant Bensor urges that the indictment was unconstitutionally vague because it failed to allege any overt acts manifesting intent to join the conspiracy. Segarra complains of an implication of an extraneous offense in a prosecution witness' testimony regarding Segarra's visit to a Methadone Maintenance Center. Finally, defendant Guzman contends that the

hearsay statements of coconspirators were wrongly admitted before a prima facie case of conspiracy had been established and that the imposition of consecutive sentences for aiding and abetting and conspiracy was error. We affirm.

The charges in this case arose out of five separate heroin transactions in which an undercover agent purchased substantial amounts of heroin from defendant Segarra. On January 28, 1976, undercover agent Rodriguez spoke with Segarra and arranged for the purchase of heroin. Segarra did not deliver the heroin at their first meeting, but rather drove with Rodriguez to the vicinity of Jimenez Garage in San Antonio, Texas. Segarra told Rodriguez to meet him later at a certain service station. The agent followed instructions, and was at the station when Segarra arrived in a blue van driven by defendant Baldarrama. The heroin delivery was not made at the service station, however, as Segarra said that he was having trouble contacting his source. Rodriguez and Segarra drove back to Jimenez Garage. The blue van driven by Baldarrama was already parked in the vicinity. After waiting for Segarra to make contact with his source, Rodriguez and Segarra drove to Stanley's Ice House. Segarra said that they were to meet the man driving the blue van at the Ice House, and that he would have the heroin. In a few minutes Baldarrama arrived in the blue van. Segarra went over to the van, appeared to take something that Baldarrama was handing out of the van, and returned to the agent's car with a package of brown heroin.

The four other transactions followed the same pattern of the agent placing an order by telephone, followed by delay while Segarra arranged delivery of the heroin by one of his sources, and sale to the agent soon after the heroin was transferred to Segarra.

Six days after the first purchase, Rodriguez called Segarra seeking to purchase some "white" heroin. Testimony at trial established that white heroin is very rare in San Antonio, where "brown" Mexican heroin is predominant. Segarra asked the agent to call back in ten minutes so he could check with his source. When Rodriguez called again Segarra said that the heroin could be delivered in one hour. During this time Segarra's residence was under surveillance. At 11:30 a. m. Segarra left his home and walked to Jack's Ice House, where he met briefly with defendant Guzman. After this meeting Guzman drove a two-tone brown Thunderbird to his residence, parked, then walked around his yard and over to a disabled car. Guzman was seen doing something to the front of the car before he entered the residence for a few minutes. Guzman then drove the Thunderbird to Segarra's home. Segarra walked out to Guzman's vehicle and talked to him for a few moments. Guzman remained in the car. Five minutes after Guzman left, Rodriguez called Segarra, who informed him that he now had the heroin. Rodriguez purchased the heroin in Segarra's home. After Rodriguez left the residence Segarra walked to the Methadone Maintenance Center, then to Jimenez Used Car Lot, where he encountered Guzman.

The third transaction took place 16 days later. Rodriguez was instructed to meet Segarra at Stanley's Ice House. Baldarrama drove up in a blue van and brought a toothpaste box out of the rear door. The box contained four packages of heroin. Baldarrama was involved in the fourth transaction as well. The pattern was identical—a call from Rodriguez, delay while the source was contacted, delivery by the source to Segarra, then Segarra's call to the agent informing him of the availability of the heroin. Baldarrama's blue van drove up to Segarra's residence and Segarra went out to the van just before Rodriguez was told that the heroin was ready.

The final purchase occurred on March 22, 1976, nearly two months after the first transaction. Soon after Rodriguez phoned, Segarra left his residence, returning 25 minutes later. Subsequent to his return a 1970 brown Pontiac arrived at Segarra's home. Segarra came out to talk with the driver of the Pontiac, who remained in the car. The Pontiac left and Segarra went to

meet Rodriguez and another agent. They arranged for the heroin to be delivered at Los Apaches Restaurant. Segarra parked in the restaurant lot and walked to the corner. In approximately 5 minutes the 1970 brown Pontiac which had been seen earlier that day at Segarra's home drove up and parked near Segarra's vehicle. The Pontiac was driven by defendant Bensor. Segarra strode quickly to Bensor's car, talked with him, and appeared to lean inside the car. As Segarra returned to his own vehicle he carried a small white package. Segarra opened his car and appeared to be placing something in the front seat. Bensor moved his car across the street, parking so that the view of the restaurant parking lot was unobstructed. Agent Rodriguez arrived shortly thereafter, and after some negotiating with Segarra, the other agents moved in to arrest both Segarra and Bensor. Three packages of heroin wrapped in a light-colored paper towel were found in Segarra's vehicle.

### Sufficiency of Evidence

■ Defendants Bensor and Guzman contend that the evidence was insufficient to support their convictions for aiding and abetting the sale of heroin by Segarra. The defendants did not present any witnesses, so the question on appeal is simply whether the jury could reasonably find Bensor and Guzman guilty on the basis of the circumstantial evidence of their connection to Segarra's sales of heroin. The evidence must be examined in the light most favorable to the Government. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). There is substantial evidence supporting the jury's conclusion that Bensor and Guzman aided Segarra's sales of heroin. Guzman met with Segarra at Jack's Ice House after Agent Rodriguez had asked to purchase white heroin. Guzman drove home, entered his residence, then went to Segarra's house. Segarra met him and 5 minutes later called Rodriguez and told him the heroin was ready. These facts

strongly indicate that Guzman was Segarra's source of white heroin. Guzman's previous conviction for possession of white heroin buttresses that interpretation of the facts. Bensor's claim is equally meritless. His automobile was seen at Segarra's house under the same circumstances as Guzman's —after Rodriguez had requested a purchase but before Rodriguez was told that he could make the pickup. Bensor's appearance at the parking lot at Los Apaches Restaurant, the white package that was visible as Segarra left Bensor's vehicle and the extremely suspicious circumstance of Bensor reparking and remaining in his car near the site of the heroin transaction all support the jury's verdict.

■ Defendant Baldarrama joins Guzman and Bensor in urging that the evidence did not support convictions of a single conspiracy of all four defendants. These defendants insist that the Government's attempt to demonstrate a "wheel" conspiracy with Segarra as the "hub" and the other defendants as "spokes" failed because there was no showing of any connection between Guzman, Bensor and Baldarrama.[1] According to this analysis, the conviction must be overturned because of the absence of a "rim" connecting the different conspirators. This court is no stranger to the question of whether the evidence indicates one large conspiracy or several smaller conspiracies. In *United States v. Perez*, 5 Cir., 1973, 489 F.2d 51, 57, *cert. denied*, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974), the court noted the appropriate method of deciding this "frustrating and challenging task." First, the court must determine if there is a variance between the evidence at trial and the single conspiracy charged in the indictment. If there is such a variance, then the appropriate inquiry is whether substantial rights of the defendant have been affected since not every variance constitutes reversible error. *See id.; United States v. Cruz*, 5 Cir., 478 F.2d 408, 413–14, *cert. denied*, 414 U.S. 910, 94 S.Ct. 259, 38 L.Ed.2d 148 (1973).

---

1. For a discussion of "wheel" or "circle" conspiracies and other multiple conspiracies, *see* *generally*, Note, *Federal Treatment of Multiple Conspiracies*, 57 Colum.L.Rev. 387 (1957).

■ It is well settled that conspirators in a "wheel" conspiracy need not actually know each member of the conspiracy, nor be privy to the details of each enterprise of the conspiracy.[2] Defendants rely on the standard of proof for a wheel conspiracy articulated in *United States v. Levine,* 5 Cir., 1977, 546 F.2d 658, 663:

> For a wheel conspiracy to exist those people who form the wheel's spokes must have been aware of each other and must do something in furtherance of some single, illegal enterprise. . . . [citations omitted] If there is not some interaction between those conspirators who form the spokes of the wheel as to at least one common illegal object, the "wheel" is incomplete, and two conspiracies rather than one are charged.

■ In evaluating the evidence of a single conspiracy involving all the defendants, we view the evidence in the light most favorable to the Government, *see Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Only slight evidence is required to connect the individual defendants with the conspiracy once the existence of a conspiracy has been proved. *See United States v. Bass,* 5 Cir., 1977, 562 F.2d 967, 968; *United States v. Binetti,* 5 Cir., 1977, 547 F.2d 265, 267, *rev'd on other grounds on rehearing,* 5 Cir., 1977, 552 F.2d 1141. There is, however, some confusion as to the proper role of the slight evidence standard.[3] In *United States v. Duckett,* 5 Cir., 1977, 550 F.2d 1027, 1031, the court explained the correct application of the slight evidence rule. The trier of fact must be convinced beyond a reasonable doubt that the accused was part of the conspiracy, but must nevertheless be cognizant that the evidence of connection to a conspiracy might appear less than completely convincing if taken out of context.

■ The present case is a good example of evidence that is adequate when taken in context. All the defendants delivered heroin to Segarra. The deliveries followed the pattern of Segarra notifying the "source" and then receiving the heroin when one of the defendants drove up. Segarra would take delivery by leaning into the source's car, except in the case of Baldarrama's second delivery. All the deliveries were in large enough amounts that the jury could have concluded that the sources must have known that Segarra was in the business of reselling heroin. The use of this distinctive pattern of delivery and sale, in concert with the central figure of Segarra, the apparent fact that Segarra was being supplied from more than one source, and the repeated use of the same locations, all point to the existence of a single conspiracy. The issue was presented to the jury with the appropriate instructions. We find that the convictions were supported by the evidence.

■ In addition, defendants completely failed to demonstrate any prejudice arising out of a possible variance between the offenses proved at trial and those charged in the indictment. Variance from the indictment is not always prejudicial, nor is prejudice assumed. *See Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935); *United States v. Perez,* 5 Cir., 1973, 489 F.2d 51, 57, *cert. denied,* 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974); *United States v. Cruz,* 5 Cir., 478 F.2d 408, 413–14, *cert. denied,* 414 U.S. 910, 94 S.Ct. 259, 38 L.Ed.2d 148 (1973). Defendants rely on *United States v. Levine,* 5 Cir., 1977, 546 F.2d 658, where the court found improper joinder of defendants under Fed.R.Crim.P. 8(b). However, defendants have not asserted any such prejudicial joinder here. No

---

**2.** *See United States v. Brasseaux,* 5 Cir., 1975, 509 F.2d 157, 160 n.3: "[t]he government is not required to prove that a conspirator had full knowledge of all the details of the conspiracy; knowledge of the essential nature of the plan is sufficient [citations omitted]."

**3.** *See United States v. Marionneaux,* 5 Cir., 1975, 514 F.2d 1244, 1249; and *United States v. Brasseaux,* 5 Cir., 1975, 509 F.2d 157, 161,

where the courts found the use of the slight evidence standard in the charge to the jury to be error. The *Brasseaux,* court described the appropriate use of the slight evidence rule: "the standard to be used . . . in judging whether the evidence against a particular defendant supported submission of his case to the jury." *Id.*

substantial right could have been affected, as the nature of the case was such that the jury could not easily have been confused and failed to consider individual guilt.[4] In conclusion, we find sufficient evidence to support the jury's verdict and no prejudice from the error claimed.

### Admissibility of Prior Conviction

All the defendants contend that the admission of defendant Guzman's prior conviction for possession of heroin was incorrect and prejudicial to their defense. The prosecution sought to introduce the prior conviction under Fed.R.Evid. 404(b), claiming that the prior conviction showed intent, scheme, or identity.[5] In addition to evidence of the prior conviction for possession of heroin, the prosecution showed that white heroin was involved in the prior conviction. The trial court instructed the jury that Guzman's prior conviction was introduced solely for the purpose of determining Guzman's intent, or to show a common scheme or design. The Government made no objection to this instruction, which failed to refer to "identity" as a possible use of the prior conviction.

In all likelihood, the omission of "identity" from the jury instruction was inadvertent, as the Government had previously stated that identity was one of the possible uses of the evidence. The trial court's technical omission does not preclude our examination of the validity of identity as a basis for admission. *See United States v. Arteaga-Limones,* 5 Cir., 529 F.2d 1183, 1190, *cert. denied,* 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976); *United States v. Gocke,* 8 Cir., 1974, 507 F.2d 820, 824 n. 4, *cert. denied,* 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1975) (where prior convictions improperly admitted to show intent were still admissible for the purpose of showing common design or scheme).[6] In *United States v. Myers,* 5 Cir., 1977, 550 F.2d 1036, 1045, this court noted that

> A much greater degree of similarity between the charged crime and the uncharged crime is required when the evidence of the other crime is introduced to prove identity than when it is introduced to prove a state of mind. [citations omitted] We have consistently held that for evidence of other crimes to be admissible the inference of identity flowing from it must be extremely strong.

Further explanation of the requisite high degree of similarity was offered in *United States v. Goodwin,* 5 Cir., 1974, 492 F.2d 1141, 1154, where the court stated that the identity exception was synonymous with

---

**4.** This case is distinguishable from *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), where the Government admitted that the evidence proved eight or more conspiracies involving 13 persons rather than the single conspiracy charged in the indictment (the indictment named 35 possible coconspirators). The Court noted the potential for confusion and prejudice attending such a large single conspiracy. *See generally,* Note, *Federal Treatment of Multiple Conspiracies,* 57 Colum. L.Rev. 387, 401–404 (1957). This narrow reading of *Kotteakos* was emphasized in *United States v. Cruz,* 5 Cir., 478 F.2d 408, 413–14, *cert. denied,* 414 U.S. 910, 94 S.Ct. 259, 38 L.Ed.2d 148 (1973): "[t]here is nothing in this case remotely similar to *Kotteakos* where confusion and error concerning the proof of plural conspiracies permeated the entirety of a jury trial for a single conspiracy." *Id.* at 414.

**5.** Fed.R.Evid. 404(b) provides:

Other crimes, wrongs, or acts.—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**6.** Like the present case, the prosecution in *Arteaga-Limones* presented the correct theory to the court, but the trial court nevertheless incorrectly based admission on intent. Defense counsel only offered a general objection to admission of the evidence. The *Arteaga-Limones* court concluded that such a "technical" error did not result in prejudice to the defendant, citing C. McCormick, Evidence § 52 at 117 (Cleary ed. 1972). However, the court in *Arteaga-Limones* had an additional ground for its holding that admission on an incorrect theory was harmless. The court found the defendant's objection to admission of the prior conviction too imprecise to preserve error. 529 F.2d 1183, 1190.

*modus operandi.*[7] The fact of a prior conviction for possession of heroin, taken alone, is not a distinctive *modus operandi.* However, the additional facts that the prior conviction involved a large amount of white heroin[8] and that white heroin is very rare in San Antonio constitute such a distinctive similarity indicating identity.

 The Government must also show a reasonable necessity for the use of the prior conviction to show identity. *See United States v. Arteaga-Limones,* 5 Cir., 529 F.2d 1183, 1197–98, *cert. denied,* 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976). The rationale for this rule is simply that prior crime evidence has significant potential for prejudicial effect, and therefore should not be employed unless really necessary. *See id.* at 921. The determination of reasonable necessity should include a balancing of probative value and possible prejudicial effect. *See United States v. Turquitt,* 5 Cir., 1977, 557 F.2d 464, 468–69; *United States v. San Martin,* 5 Cir., 1974,

505 F.2d 918, 922; *United States v. Goodwin,* 5 Cir., 1974, 492 F.2d 1141, 1150. There is such a reasonable necessity in the present case. The evidence of Guzman's involvement with Segarra is circumstantial, and relies in large part on inferences as to the likelihood that Guzman transferred the white heroin to Segarra when parked outside of the latter's residence. The fact of a prior conviction for possession of a large quantity of white heroin has a very high probative value in this context, and outweighs the possible prejudicial effect.

 It should be noted that the trial court's instruction to the jury that Guzman's prior conviction was introduced to demonstrate intent could conceivably have caused some confusion on the conspiracy count. However, there is no real danger of impropriety here, since the prior conviction did not involve a conspiracy, and therefore could not properly have been used by the jury to indicate an intent to conspire.[9]

7. The court viewed *modus operandi* narrowly: "[a] prior or subsequent crime or other incident is not admissible for this purpose merely because it is similar, but only if it bears such a high degree of similarity as to mark it as the handiwork of the accused." *Id. Goodwin's* strict articulation of *modus operandi* was approved in *United States v. Park,* 5 Cir., 1976, 525 F.2d 1279, 1284.

8. Defendant urges that these supplemental facts concerning the prior conviction should not have been admitted. There is no sound reason for such a contention where, as here, the supplemental facts establish the relevance of the prior conviction. *Cf. United States v. San Martin,* 5 Cir., 1974, 505 F.2d 918, 922 (urging the prosecution to present the circumstances of the offenses). Indeed, it is difficult to see how a distinctive *modus operandi* can be shown absent evidence of the circumstances of the offense.

9. This court has previously noted the problem of admitting evidence of a prior conviction to show intent to conspire in the Government's case-in-chief. In *United States v. Adderly,* 5 Cir., 1976, 529 F.2d 1178, the court expressed disapproval of the practice of admitting such evidence before the defendant had contested the issue of intent: "[i]t is only after the defense is presented that the trial judge can know if intent or knowledge or any exception to the exclusion rule is truly a disputed issue in the trial." *Id.* at 1182. The *Adderly* court also considered the problem of general and specific

intent in regard to conspiracy. Refusing to rest its reasoning on a distinction between general and specific intent, the court nevertheless found a qualitative difference between intent in conspiracy and in substantive offenses: "by its [conspiracy's] very nature requires an element of intent or knowledge sufficient to allow an exception to the general rule of exclusion of prior misconduct." 529 F.2d at 1180. *Adderly* was a retrial of a case in which the defendant had admitted to presence at the site of unlawful gambling, but had denied intent. The court held that "under the peculiar circumstances of this case—where the government could anticipate the defense testimony because of the previous trial . . .—the untimely admission of prior-misconduct evidence does not provide grounds for reversal." *Id.* at 1182. Thus, this court has not yet squarely decided whether the Government can introduce evidence of a prior conviction to show an intent to conspire if the defendant merely pleads not guilty. *Cf. United States v. Impson,* 5 Cir., 1977, 562 F.2d 970, 971 n.3; *United States v. Urdiales,* 5 Cir., 1975, 523 F.2d 1245, 1247, *cert. denied,* 426 U.S. 920, 96 S.Ct. 2625, 49 L.Ed.2d 373 (1976) (noting but not deciding the issue). We need not decide this question, as the rationale for disallowing such evidence does not apply if the prior conduct is used to show identity. Unlike intent, identity is unquestionably at issue unless the defendant admits to commission of the act, but denies the requisite intent.

■ Defendant Baldarrama has urged that Guzman's prior state conviction was inadmissible because it was still on appeal. This contention is meritless, as defendant has offered no reason why use of prior crimes to show identity is different from impeachment by use of prior convictions, where pendency of an appeal does not render evidence of a conviction inadmissible. *See* Fed.R.Evid. 609(e); *United States v. Cisneros*, 5 Cir., 1974, 491 F.2d 1068, 1076 n.13.

*Other Contentions*

■ Baldarrama further claims that he was prejudiced by the trial court's refusal to grant him a severance as provided by Fed.R.Crim.P. 14. Defendant's reason for demanding a severance was the possible prejudicial effect of the admission of proof of Guzman's conviction. The decision to grant or deny a Rule 14 severance is within the sound discretion of the trial court, and Baldarrama has not carried the "heavy burden" of demonstrating an abuse of that discretion. *See United States v. Nims*, 5 Cir., 1975, 524 F.2d 123, 125, *cert. denied*, 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976). Prior convictions of codefendants generally are not alone sufficient to warrant a finding that the trial court abused its discretion in refusing to grant a severance. *See United States v. Perez*, 5 Cir., 1973, 489 F.2d 51, 67, *cert. denied*, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974).

■ Defendant Bensor contends that his indictment was unconstitutionally vague, relying on the fact that the indictment failed to allege any overt acts manifesting his intent to join the conspiracy. An indictment need only contain the elements of the offense charged, apprise the defendant of what he must be prepared to meet and protect him from double jeopardy. The conspiracy count here tracked the language of the statute, and the five substantive counts alleged eight specific acts. This is constitutionally sufficient. *See United States v. Beasley*, 5 Cir., 1975, 519 F.2d 233, 246, *vacated on other grounds*, 425 U.S. 956, 96 S.Ct. 1736, 48 L.Ed.2d 201 (1976).

■ Segarra alleges plain error was committed by the trial court in admitting testimony regarding Segarra's visit to a Methadone Center after a heroin transaction with Agent Rodriguez. Defendant argues that this testimony of a DEA agent following Segarra after one of the heroin purchases was the equivalent of evidence of prior misconduct. A visit to a Methadone Maintenance . Center does not necessarily imply either receipt of methadone treatment or prior unlawful conduct. The testimony was not admitted to show that Segarra was a heroin addict, but rather was a minor incident in the agent's description of Segarra's actions after selling heroin to Rodriguez. In any case, the evidence against Segarra was so overwhelming that no prejudice could have resulted from the admission of this testimony. *See United States v. Klein*, 5 Cir., 1977, 546 F.2d 1259, 1263.

■ Defendant Guzman claims that the hearsay statements of coconspirators were admitted before a prima facie case of conspiracy had been shown, and that this was plain error. Guzman's reliance on *United States v. Apollo*, 5 Cir., 1973, 476 F.2d 156, is misplaced, as the court in that case squarely held that coconspirators' statements may be admitted before a prima facie case of conspiracy has been shown. *See id.* at 163; *United States v. Leaman*, 5 Cir., 546 F.2d 148, 150, *cert. denied*, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977). Defendant also suggests that the trial court's failure to give cautionary instructions at the time the testimony was admitted was plain error. The court in *Apollo* emphasized the importance of instructing the jury that the hearsay statements of coconspirators could not be considered unless there was independent evidence of a conspiracy, citing *Lutwak v. United States*, 344 U.S. 604, 618–19, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953).[10] This position has been reaffirmed in several recent cases, *see, e. g.*, *United States v. Rixner*, 5 Cir., 1977, 548 F.2d 1224, 1226–28; *United States v. Beas-*

---

10. *United States v. Apollo*, 5 Cir., 1973, 476 F.2d 156, 163.

*ley*, 5 Cir., 1975, 513 F.2d 309, 312–13. The reason for the insistence on cautionary instructions at the time of admission is the fear that without such instructions the hearsay declarations will bootstrap proof of the existence of the conspiracy when independent evidence of the conspiracy is the condition of the use of the declarations at trial. There is no plain error or any possibility of prejudice from such bootstrapping in the present case, as there was sufficient independent evidence of conspiracy. *See Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953); *United States v. Rixner*, 5 Cir., 1977, 548 F.2d 1224, 1227–28; *United States v. Jennings*, 5 Cir., 1976, 527 F.2d 862, 866–69; *United States v. Moore*, 5 Cir., 1974, 505 F.2d 620, 623–24, *cert. denied*, 421 U.S. 918, 95 S.Ct. 1581, 43 L.Ed.2d 785 (1975). *But see United States v. Beasley*, 5 Cir., 1975, 513 F.2d 309, 312–13.

 The final contention is Guzman's claim that the imposition of consecutive sentences for the substantive and conspiracy offenses was error. The general rule is that a court may impose consecutive sentences for the conspiracy and the substantive offense. *See Iannelli v. United States*, 420 U.S. 770, 777–79, 95 S.Ct. 1284, 1289–90, 43 L.Ed.2d 616 (1975); *Curtis v. United States*, 5 Cir., 1977, 546 F.2d 1188, 1190. The only recognized exception to the general rule is when the substantive offense is of such a character as to require two persons to agree, and the conspiracy is between the same two persons. *See id.* We need not inquire into the applicability of this exception, as there is a four-person "wheel" conspiracy in the present case.

After full consideration of the defendants' various claims, we find no error. Therefore, the convictions are

AFFIRMED.