577 F.2d 1313
 UNITED STATES of America, Plaintiff-Appellee,
v.
James C. BEIL and Daniel Michael Bonnetts, Defendants-Appellants.
 No. 77-5629.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 11, 1978.
 
 Edward M. Genson, Jeffrey B. Steinback, Chicago, Ill., for Beil.
 John C. Swearingen, Jr., Ben B. Philips, Columbus, Ga., for Bonnetts.
 D. L. Rampey, Jr., U. S. Atty., Richard E. Nettum, Asst. U. S. Atty., Macon, Ga., for plaintiff-appellee.
 Appeals from the United States District Court for the Middle District of Georgia.
 Before COLEMAN, AINSWORTH and VANCE, Circuit Judges.
 AINSWORTH, Circuit Judge:
 
 
 1
 Defendants James C. Beil and Daniel Michael Bonnetts were convicted following a bench trial of conspiring under 18 U.S.C. § 371 to violate the Dyer Act, 18 U.S.C. §§ 2312, 2313.[1] The district court sentenced each to three years' imprisonment. In this appeal the defendants challenge the validity of their convictions on two grounds, neither of which we find meritorious. Accordingly, we affirm the convictions.
 
 
 2
 The facts in this case are stipulated and fully set forth as Appendix A. These facts demonstrate that between September 26, 1973 and July 19, 1975, defendant Beil stole two automobiles in Illinois and sold them in Illinois to Charles Raymond Jordan, who then transported them to Columbus, Georgia, and sold at least one of them to Leon Brooks Murdock. Between July 9, 1974 and February 17, 1975, defendant Bonnetts stole three automobiles in Illinois and sold them in Illinois to Charles Raymond Jordan, who then transported at least two of them to Columbus, Georgia and thereafter back to Chicago, Illinois, where he sold them to Nicholas Katinas.
 
 
 3
 Beil and Bonnetts contend first that the district court erred in not granting their motion for judgment of acquittal, because even though the automobiles they admittedly stole did move in interstate commerce after the theft, the Government failed to prove that the defendants actually knew the automobiles would move in interstate commerce when they sold the cars to Jordan. According to Beil and Bonnetts, such knowledge is an essential element of the offense of conspiring to violate the Dyer Act. We disagree.
 
 
 4
 By the language itself of the Dyer Act, set forth in footnote 1, the only knowledge required by the statute is that the property was stolen. Knowledge that the property has moved or will move in interstate commerce is not an element of the offense. See, e. g., Overton v. United States, 5 Cir., 1968, 405 F.2d 168; Bibbins v. United States, 9 Cir., 1968, 400 F.2d 544. Cf. United States v. Doolittle, 5 Cir., 507 F.2d 1368, 1372, aff'd en banc, 5 Cir., 518 F.2d 500, cert. denied, 423 U.S. 1008, 96 S.Ct. 439, 46 L.Ed.2d 380 (1975) (18 U.S.C. § 1952). Beil and Bonnetts were not charged with violating the Dyer Act itself, however, but with conspiring to violate it under the general conspiracy statute, 18 U.S.C. § 371. It is clarion clear that "in order to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute, the Government must prove at least the degree of criminal intent necessary for the substantive offense itself." United States v. Feola, 420 U.S. 671, 686, 95 S.Ct. 1255, 1265, 43 L.Ed.2d 541 (1975). In this respect the Government's task was not difficult; both defendants knew that the automobiles sold to Jordan were stolen because they themselves were the admitted thieves. The only remaining question, therefore, is whether conspiracy to violate the Dyer Act requires more in this case that the defendants knew that the cars would move in interstate commerce.
 
 
 5
 In United States v. Feola, supra, the Supreme Court held that knowledge that the intended victim is a federal officer is not a requisite for the crime of conspiracy under 18 U.S.C. § 371 to violate 18 U.S.C. § 111, which prohibits an assault upon a federal officer while he is engaged in the performance of his official duties. The Court found first that in order to incur criminal liability under 18 U.S.C. § 111, an assailant need not be aware that his victim is a federal officer. 420 U.S. at 684, 95 S.Ct. at 1264. The Court then rejected the defendant's argument that conviction of conspiracy under 18 U.S.C. § 371 to violate Section 111 requires such an awareness, because, found the Court, the two values underlying the law of conspiracy would not be served thereby. The first of these values is the protection of society from the dangers of concerted criminal conduct. The Court stated "(t)hat individuals know that their planned joint venture violates federal as well as state law seems totally irrelevant to that purpose of conspiracy law which seeks to protect society from the dangers of concerted criminal activity." 420 U.S. at 693, 95 S.Ct. at 1268. The second value underlying the law of conspiracy pertains to the fact that conspiracy is an inchoate crime. At some point between preparation and consummation of a crime, the likelihood that the crime will be committed is sufficiently great and the criminal intent is sufficiently formed to justify intervention of the criminal law. The law of conspiracy protects society by defining this point of intervention.[2] In this regard the Court stated:
 
 
 6
 Again, we do not see how imposition of a strict "anti-federal" scienter requirement would relate to this purpose of conspiracy law. Given the level of intent needed to carry out the substantive offense, we fail to see how the agreement is any less blameworthy or constitutes less of a danger to society solely because the participants are unaware which body of law they intend to violate. Therefore, we again conclude that imposition of a requirement of knowledge of those facts that serve only to establish federal jurisdiction would render it more difficult to serve the policy behind the law of conspiracy without serving any other apparent social policy.
 
 
 7
 420 U.S. at 694, 95 S.Ct. at 1268-69.
 
 
 8
 Following the Supreme Court's lead in Feola, we find with respect to the Dyer Act that the two values underlying the law of conspiracy would not be served by requiring that those who conspire to violate the Act know that stolen vehicles will move or have moved in interstate commerce in order to incur criminal liability. This result is consistent with our holding in United States v. Muncy, 5 Cir., 1976, 526 F.2d 1261. There the trial court instructed the jury that knowledge that the stolen property had moved in interstate commerce was not an essential element of the offense of conspiring to violate 18 U.S.C. § 2315, which provides in pertinent part:
 
 
 9
 Whoever receives, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, or pledges or accepts as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, moving as, or which are a part of, or which constitute interstate or foreign commerce, knowing the same to have been stolen, unlawfully converted, or taken . . . (s)hall be fined not more than $10,000 or imprisoned not more than ten years, or both.
 
 
 10
 We found no error in the district court's instruction because "knowledge of jurisdictional facts is not required in determining guilt of either the substantive offense or the conspiracy offense." 526 F.2d at 1264.[3] Moreover, in United States v. Kelly, 5 Cir., 1978, 569 F.2d 928, 934, this Court held that "(k)nowledge or foreseeability of a victim's travel in interstate commerce" need not be proven when the defendant was charged with causing and conspiring to cause a person to travel in interstate commerce in execution of a scheme to defraud in violation of 18 U.S.C. §§ 2, 371, and 2314. See United States v. Greer, 7 Cir., 1972, 467 F.2d 1064, 1071-72, cert. denied, 410 U.S. 929, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973); Gurleski v. United States, 5 Cir., 1968, 405 F.2d 253, 268-69, cert. denied, 395 U.S. 981, 89 S.Ct. 2140, 23 L.Ed.2d 769 (1969). The defendants' contention is therefore without merit.
 
 
 11
 Beil and Bonnetts next contend that there was insufficient evidence to convict them of a conspiracy. Beil contends that the Government failed to show that he had any agreement with Jordan, and Beil and Bonnetts together contend that the Government failed to show that they had any agreement with each other, that they had knowledge of each other's dealings with Jordan, or that they had knowledge of Jordan's later dealings in interstate commerce with Murdock and Katinas.
 
 
 12
 In considering claims of insufficient evidence, this Court must examine the evidence in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); United States v. Cadillac Overall Supply Co., 5 Cir., 1978, 568 F.2d 1078, 1080, 1084 (bench trial). Beils' contention that he had no agreement with Jordan and both defendants' contention that they had no knowledge of Jordan's later sales in interstate commerce are refuted by the stipulated facts, which provide that both Beil and Bonnetts "understood when they sold the automobiles . . . to Charles Raymond Jordan that Jordan, acting in concert with others, was planning to dispose of the said automobiles either by sale or by selling said automobiles as spare parts."[4] Although Beil and Bonnetts do not expressly so state, it appears that their other contentions that they had no agreement with each other and that they had no knowledge of each other's dealings with Jordan amount to the argument that there was no single conspiracy. Thus, according to the defendants, although the Government proved individual conspiracies between Beil and Jordan and Bonnetts and Jordan, the Government allegedly did not prove a single conspiracy among Beil, Bonnetts, and Jordan, which was the type of conspiratorial conduct alleged in the indictment.
 
 
 13
 We recently addressed a similar contention in United States v. Baldarrama, 5 Cir., 1978, 566 F.2d 560. We rejected the Baldarrama defendants' contention on two grounds, the second of which is dispositive of the defendants' contention in the instant case. After noting that "(v)ariance from the indictment is not always prejudicial, nor is prejudice assumed,"566 F.2d at 566, citing, e. g., Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935), we found in Baldarrama that the "defendants completely failed to demonstrate any prejudice arising out of a possible variance between the offenses proved at trial (allegedly the separate conspiracies) and those charged in the indictment (the single conspiracy)." 566 F.2d at 566. In this regard the Baldarrama defendants relied on United States v. Levine, 5 Cir., 1977, 546 F.2d 658, where the Court found improper joinder of defendants under Fed.R.Crim.P. 8(b), but none of the Baldarrama defendants asserted any prejudicial joinder in their case. Moreover, "the nature of the case was such that the jury could not easily have been confused and failed to consider individual guilt." 566 F.2d at 566-67. Similarly, in this case defendants Beil and Bonnetts also have shown no prejudice resulting from a possible variance between the two conspiracies allegedly proved at trial and the single conspiracy charged in the indictment. Like the Baldarrama defendants, the defendants here do not assert prejudicial joinder, and the possibility of jury confusion is nonexistent because Beil and Bonnetts were tried before the court. Accordingly, their claim is meritless.
 
 
 14
 Having considered each of the defendants' contentions and finding no error, their convictions are
 
 
 15
 AFFIRMED.
 
 APPENDIX A
 
 16
 (a) On or about August 13, 1974, at Schaumburg, Illinois, Daniel Michael Bonnetts stole a 1974 Lincoln Continental IV, VIN 4Y89A828487, from the possession of Merle H. Lahti.
 
 
 17
 (b) On or about the same date, Daniel Michael Bonnetts sold the said automobile to Charles Raymond Jordan for $600.00 in Illinois.
 
 
 18
 (c) Between August 13, 1974, and March 24, 1975, Charles Raymond Jordan transported the said automobile from Illinois to, among other places, Columbus, Georgia and thereafter to Chicago, Illinois, where it was sold by Charles Raymond Jordan to Nicholas Katinas.
 
 
 19
 (d) On or about July 9, 1974, at Worth, Illinois, Daniel Michael Bonnetts stole a 1974 Ford Thunderbird, VIN 4J87A133837, from the possession of Norman Steigert.
 
 
 20
 (e) On or about July 9, 1974, Daniel Michael Bonnetts sold the automobile specified in subparagraph (d), above, to Charles Raymond Jordan in Illinois.
 
 
 21
 (f) Between July 9, 1974, and February 13, 1975, Charles Raymond Jordan transported the automobile specified in subparagraph (d), above, from Illinois to, among other places, Columbus, Georgia and thereafter to Chicago, Illinois where it was sold by Charles Raymond Jordan to Nicholas Katinas.
 
 
 22
 (g) On or about February 17, 1975, at Chicago, Illinois, Daniel Michael Bonnetts stole a 1974 Lincoln Continental Mark IV, VIN 4Y89A835241, from the possession of David Hussman.
 
 
 23
 (h) On or about February 17, 1975, Daniel Michael Bonnetts sold the automobile specified in subparagraph (g), above, to Charles Raymond Jordan in Illinois.
 
 
 24
 (i) On or about September 26, 1973, at Chicago, Illinois, James C. Beil stole a 1973 Ford Thunderbird, VIN 3J87N191094, from the possession of Eugene Baer.
 
 
 25
 (j) On or about September 26, 1973, James C. Beil sold the automobile specified in subparagraph (i), above, to Charles Raymond Jordan in Illinois.
 
 
 26
 (k) Between September 26, 1973, and March 14, 1974, Charles Raymond Jordan arranged for the automobile specified in subparagraph (i), above, to be transported to Columbus, Georgia where it was sold by Charles Raymond Jordan to Leon Brooks Murdock, a used car sales person.
 
 
 27
 (l ) On or about July 19, 1975, at Chicago, Illinois, James C. Beil stole a 1975 Cadillac Elderado, VIN 6L47S5Q230589 from the possession of Joseph Edward Rorem.
 
 
 28
 (m) On or about July 19, 1975, James C. Beil sold the automobile specified in subparagraph (l ), above, to Charles Raymond Jordan in Illinois.
 
 
 29
 (n) Between July 19, 1975 and January 13, 1976, Charles Raymond Jordan transported the automobile specified in subparagraph (l ), above, to Columbus, Georgia.
 
 
 30
 (o ) Daniel Michael Bonnetts and James C. Beil understood when they sold the automobiles described in subparagraphs (a) through (n), inclusive, to Charles Raymond Jordan that Jordan, acting in concert with others, was planning to dispose of the said automobiles either by sale or by selling said automobiles as spare parts.
 
 
 31
 (p) Although Daniel Michael Bonnetts and James C. Beil acknowledge the interstate transportation of the aforedescribed automobiles after they were sold to Charles Raymond Jordan, neither Daniel Michael Bonnetts nor James C. Beil knew that the said automobiles would be removed from Illinois by Jordan after he obtained possession of them. In short, Daniel Michael Bonnetts and James C. Beil had no knowledge, actual or implied, that any automobile which they stole and sold to Charles Raymond Jordan would ever leave Illinois.
 
 
 32
 COLEMAN, Circuit Judge, dissenting.
 
 
 33
 With all deference to the views of my Brethren, I cannot concur in the foregoing opinion.
 
 
 34
 The stipulated facts wholly failed to establish the conspiracy charged in the indictment.
 
 
 35
 Under the facts of this case, I find no congressional enactment or clear judicial precedent which would transmogrify a local theft and a local sale of the stolen goods into an interstate offense.
 
 
 36
 Consequently, I would reverse the convictions.
 
 
 37
 * The Stipulated Facts do not Support the Conspiracy Charge
 
 
 38
 The trouble with this case is that the defendants were not prosecuted for a violation of the Dyer Act. They were prosecuted for a conspiracy. The essential elements of the two offenses are different; the requisite proof is not the same.
 
 
 39
 Conspiracies involve action to be taken in the future. One cannot conspire to do something which has already been done. By its very terms the indictment charged that these defendants conspired to commit a specific act. What was that act? It was to transport automobiles in interstate commerce, knowing them to have been stolen.
 
 
 40
 The stipulated facts are that the defendants had neither express nor implied knowledge that the local purchaser would later move the automobiles across state lines. The stipulation does not say that the subsequent interstate transportation by the purchaser occurred by or with the conspiratorial knowledge, intent, purpose, agreement, or participation of the appellants. These appellants stole the automobiles in Illinois and sold them in Illinois, clearly a local crime. Sometime later, maybe six months later, the local purchaser transported the vehicles across state lines. The astounding thing is that the stipulation does not say that the purchaser knew the automobiles were stolen when he bought them; it does not say that he knew the automobiles were stolen when he transported them. Hence, an indispensable element of a Dyer Act violation by the purchaser is totally lacking.
 
 
 41
 These appellants are entitled to the presumption of innocence and, most assuredly, may not be convicted unless the government establishes the essential allegations of its indictment. It inexorably follows that there has been a total lack of proof in this case and these convictions should not be allowed to stand.
 
 
 42
 The majority holds that these fatal deficiencies were cured, post hoc, ergo propter hoc, by proof that the automobiles crossed state lines, ordinarily nothing more than a jurisdictional fact in a completed Dyer Act violation. The trouble with this analysis is that the stipulated facts do not establish a Dyer Act violation by anybody. This being so, the application of what could have been a jurisdictional fact in an appropriate case simply cannot infuse life into a body where life had never existed.
 
 
 43
 This is more cogently so when we realize that what we have here is an effort to use a jurisdictional fact applicable to one type of case (interstate transportation of a stolen vehicle, known to be stolen) to serve as proof of an entirely different but indispensable, element of a conspiracy case (knowledge of a conspiracy, agreement to participate in it, and some act in furtherance of it).
 
 
 44
 As I commented from the Bench at oral argument, the government simply stipulated itself out of Court and, up to and through oral argument, refuses to see it.
 
 
 45
 Without further ado, I might stop here. But there is more which ought to be said.
 
 
 46
 The government had to show that a conspiracy existed, that the defendants knew of the conspiracy, and that knowing of it they agreed to it and participated in it, see, e. g., United States v. Dyar, 5 Cir., 1978, 574 F.2d 1385.
 
 
 47
 As the record shows, on a Rule 20 transfer, these defendants attempted to plead guilty before Judge John F. Grady in the Northern District of Illinois. At the plea hearing, the Judge refused to accept the plea. He stated,
 
 
 48
 Well, I am sure that for a conspiracy to violate this statute, the element of the knowledge of the interstate transportation is required. At least the defendant would have to be on notice of facts from which that transportation would be readily inferable. That is the very least. (Emphasis added).
 
 
 49
 I think Judge Grady was right.
 
 
 50
 He remanded the case to the Middle District of Georgia, where the indictment had been returned.
 
 
 51
 When the case got back to Georgia the government and the defendants entered into the stated stipulation. Then the United States Attorney took the following position:
 
 
 52
 Your Honor, of course the Government is taking the position that the stipulated facts show that both defendants participated in a conspiracy. (Emphasis mine).
 
 
 53
 In all due respect, this is incredible. The stipulation neither mentions nor describes a conspiracy with anybody quite to the contrary, the stipulation specifies that defendants had no knowledge, actual or implied, that the vehicles would ever leave the State of Illinois. If they had no such knowledge how, beyond a reasonable doubt, could they have agreed to, or participated in, the transportation interstate?
 
 II
 
 54
 This Conviction is Not Supported by Congressional Enactment
 
 
 55
 or Judicial Precedent
 
 A.
 
 56
 The majority says that although the vehicles were stolen and sold in Illinois, a completed state offense, and although the defendants had no joint purpose, agreement, knowledge, or connection as to the subsequent occurrences, they were nevertheless guilty of a conspiracy to violate the Dyer Act where, sometime within the ensuing six months, the vehicles were transported by others in interstate commerce without a showing that the transporters knew the vehicles were stolen.
 
 
 57
 The majority begins its analysis by saying that in Dyer Act prosecutions "(K) nowledge that the property . . . will move in interstate commerce is not an element of the offense", citing three cases.
 
 
 58
 Let us look at the cases cited by the majority. In Overton v. United States, 5 Cir. 1968, 405 F.2d 168, the automobile had already been transported in interstate commerce. Overton was convicted of receiving it, knowing it to have been stolen, 18 U.S.C. § 2312. "Will move" was not in the case.
 
 
 59
 In Bibbins v. United States, 9 Cir. 1968, 400 F.2d 544, the defendant himself had driven the automobile across a state line, although he did not know he had actually crossed it.
 
 
 60
 United States v. Doolittle, 5 Cir. 1975, 507 F.2d 1368, affirmed en banc, 518 F.2d 500, was really concerned with the validity of a wire tap in a prosecution for conspiracy to use interstate wire and telephone facilities to carry on illegal gambling operations. Interstate activity was inherent in the agreement.
 
 
 61
 Finally, the Dyer Act, 18 U.S.C. § 2312, says, "whoever transports". The vehicle must first be stolen, as here, and, with knowledge of that fact, the vehicle must thereafter be transported.
 
 
 62
 I must disagree with this "will move " theory.
 
 
 63
 If the vehicle is stolen, if the defendant knows it, and the vehicle "will move", then, depending on the specific circumstances, the applicable statute would be 18 U.S.C. § 2:
 
 
 64
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
 
 
 65
 The record reflects, of course, that this prosecution was in no way grounded on 18 U.S.C. § 2, as indeed it could not have been because the stipulated facts would not have supported it.
 
 B.
 
 66
 I think the Ninth Circuit correctly decided the issue now before us in United States v. Berlin, 9 Cir. 1973, 472 F.2d 13, a prosecution involving the Dyer Act but brought under 18 U.S.C. § 2(b). The Court pointed out that the Dyer Act deals with stolen tangible personal property, not the use of the mails in the ordinary course of business, or stolen securities, or forged travelers checks, or the like. I quote:
 
 
 67
 The United States contends for a rule that sale of a car (known by the seller to be stolen), followed by interstate transportation by an innocent purchaser constitutes a violation of the Dyer Act by the seller where the interstate transportation is reasonably foreseeable. (Emphasis added).
 
 
 68
 We agree with appellants that this rule is too broad. Since interstate automobile transportation is now commonplace, this construction would seem to render every sale of a stolen car a federal offense. Section 2(b) does, as appellants contend, have overtones of agency, and, in our judgment, the willful causation to which it refers must be purposeful (emphasis added) rather than be based simply upon reasonable foreseeability.
 
 
 69
 Such is not the case in the ordinary sale of tangible stolen property. In the ascertainment of purpose and intent our focus is not on a course of commercial operations which the very fact of sale dictates will regularly occur. Rather, it is on the interstate transportation itself. (Omitting the immediately preceding language).
 
 
 70
 472 F.2d at 14, 15.
 
 C.
 
 71
 The Court says that its views are consistent with United States v. Muncy, 5 Cir. 1976, 526 F.2d 1261. I disagree. I sat on that case and concurred in the opinion, which, as the instruction there attacked clearly reflects, held only that for jurisdictional purposes the government had to prove that the beef moved in interstate commerce, that (to quote the instruction) the government did not have to prove that "prior to or after the alleged receipt of such meat, (the defendants) had knowledge of the fact that the meat had been transported (emphasis mine) in interstate commerce . . . ." 526 F.2d at 1264, n.1.
 
 
 72
 The case does not stand for the proposition that once a defendant completes a local theft he may thereafter, in the absence of the requisite purpose or knowledge, be prosecuted for conspiracy if perchance (unknown to him) others put the stolen goods in interstate commerce.
 
 
 73
 United States v. Kelly, 5 Cir. 1978, 569 F.2d 928, is similarly inapposite. There, the defendant was charged with causing and conspiring to cause a person to travel in interstate commerce in execution of a scheme to defraud; in other words, Kelly had acted with knowledge of future events. That element was completely stipulated out of this case. Of course, the defendants here knew that the buyer would sell the cars, or parts from them, but that is not enough. As the Ninth Circuit observed in United States v. Berlin, supra, the prosecution must be based on a purposeful act. It cannot stand on "reasonable foreseeability".
 
 III
 
 74
 United States v. Feola, 420 U.S. 671, 95 S.Ct. 1255, 43
 
 L.Ed.2d 541
 
 75
 The teachings of United States v. Feola, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541, are, in my opinion, irrelevant to the disposition of this case. I have already pointed out that the stipulation of facts now before us described no federal offense from which a jurisdictional fact could be lifted to serve as a crutch for these convictions.
 
 
 76
 This case is distinguishable from Feola in other respects.
 
 
 77
 First, the existence of the conspiracy at a time prior to the commission of the substantive offense was well established. It was unsuccessfully argued only that lack of knowledge that the assaulted individual was a federal officer provided a defense to the charge brought in the indictment.
 
 
 78
 Second, I can find nothing in Feola which says that a person may be found guilty of a conspiracy although he did not know of its existence, or did not agree to participate in it, or had no joint purpose of furthering it.
 
 
 79
 Third, the jurisdictional fact in Feola was a matter of status, not a matter of action. The person assaulted was a federal officer. What the defendants did or did not do could not have changed that. They did not have to do anything to confer jurisdiction. Like Mount Everest, it was there and had been all the time.
 
 
 80
 The Dyer Act is a different matter. Before jurisdiction attaches there must be action, i. e., someone must transport the vehicle across a state line.
 
 
 81
 In Feola the defendants did not have to know that their intended victim was a federal officer if they intended, in any event, to assault him. In Dyer Act cases by command of the statute, knowledge is an indispensable ingredient. One may transport a stolen automobile across a state line a thousand times, which is enough to confer ordinary interstate jurisdiction, and yet not violate the criminal statute unless he knows that the vehicle was stolen. In Dyer Act cases there must be more than status; there must be knowing action, 18 U.S.C. § 2112. The defendant must, in an illegal manner, knowingly be connected with it; he must have knowingly conspired to have it done, or knowingly caused it to be done, or knowingly aided and abetted it, or knowingly done it himself. So, both under the terms of the statute and under the stipulated facts in this case, it is my view that interstate transportation is something more than jurisdictional in a Dyer Act case. It is an element of the crime itself.
 
 
 82
 Of course, under 18 U.S.C. § 2113, dealing with receipt, concealment, etc., after the fact, interstate transportation is merely jurisdictional if the defendant knew of the stolen character of the vehicle. But § 2113 does not fit the facts in our case.
 
 IV
 
 83
 On what should be sound federal judicial policy I must also disagree with this decision. If there is anything the federal courts do not need it is more jurisdiction and more cases. These confessed local car thieves were clearly guilty of a completed local crime. There is no reason why Illinois could not have promptly made them involuntary residents at Joliet. What we have here, in my judgment, is an unprecedented expansion of federal criminal jurisdiction. Henceforth, in the Fifth Circuit, the completed state crime of automobile theft can automatically ripen into a matter of federal criminal prosecution if the vehicles subsequently move, in the hands of others, in interstate commerce, even though the local thief had not joined in any agreement or purpose that such should take place and even though there is no showing that the transporter knew of the stolen character of the vehicles.
 
 Conclusion
 
 84
 Although the Dyer Act has been on the books for sixty years, I have searched in vain for any case in the federal jurisprudence which, under similar facts, holds what the Court has held in this case.
 
 
 85
 I must respectfully dissent.
 
 
 
 [1]
 18 U.S.C. § 371 provides:
 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.
 18 U.S.C. § 2312 provides:
 Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.
 18 U.S.C. § 2313 provides:
 Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.
 
 
 [2]
 The law of conspiracy identifies the agreement to engage in a criminal venture as an event of sufficient threat to social order to permit the imposition of criminal sanctions for the agreement alone, plus an overt act in pursuit of it, regardless of whether the crime agreed upon actually is committed
 420 U.S. at 694, 95 S.Ct. at 1268.
 
 
 [3]
 The defendants attempt to distinguish Muncy by pointing out that there the defendant's conduct occurred after the interstate movement while in this case the defendants' conduct occurred before the interstate movement. We view that as a distinction without a difference
 
 
 [4]
 As we have already held it was not necessary for the Government to prove that the defendants knew the stolen cars would move in interstate commerce