**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Tom Henry PATTON,**
**Defendant-Appellant.**

**No. 78–5490.**

United States Court of Appeals,
Fifth Circuit.

May 3, 1979.

Robert B. Thompson, Gainesville, Ga., for defendant-appellant.

J. A. Canales, U. S. Atty., Anna E. Stool, George A. Kelt, Jr., Asst. U. S. Attys., Houston, Tex., Emilio Davila, Asst. U. S. Atty., Laredo, Tex., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before JONES, CLARK and GEE, Circuit Judges.

PER CURIAM:

Appellant Tom Henry Patton was indicted and .convicted on one count charging conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. § 846. Patton appeals his conviction on three grounds.[1] He contends that there was prejudicial variance between indictment and proof, that two alleged hearsay statements were improperly admitted, and that he was prejudiced by rearraignment in mid-trial. Rejecting each of these contentions, we affirm the conviction.

The indictment charged that beginning in April 1975 eleven persons conspired with each other and with persons unknown to possess marijuana with intent to distribute. The defendants on trial below were appellant Tom Henry Patton, Jess Cosby, James Anthony Fuller, Jack Jerry Smith and Bar-

---

1. Patton originally asserted improper venue as a fourth ground of appeal, but his counsel withdrew that issue at oral argument, noting that he had overlooked evidence in the record establishing venue in the Southern District of Texas.

bara Lowman, all Atlanta residents.[2] Viewed in the light most favorable to the government,[3] the evidence adduced at trial showed that Richard Williams was a marijuana supplier operating out of McAllen, Texas, shipping marijuana to Georgia, South Carolina and Tennessee. Patton bought marijuana from Williams over a two-year period, both personally and through Cosby, Fuller and Smith. When Williams was sent to prison in November 1976, Cosby made arrangements for another source of supply for the Atlanta group. He contacted Dwight Rutledge, who had connections with a Corpus Christi-based group involving Ted Osborne, Donald Benton, David Bush and Joe Wedel, who shipped marijuana primarily to the Atlanta area. Only one purchase was made through Rutledge because of dissatisfaction with the quality of the marijuana.

Appellant asserts that the proof established separate and distinct conspiracies rather than the single conspiracy charged in the indictment, and that he was prejudiced by this variance between indictment and proof. He characterizes the evidence as establishing a conspiracy among Fuller, Smith, Williams, Cosby and himself, a separate and unrelated conspiracy among Cosby, Rutledge and Wedel, and yet a third distinct conspiracy among Wedel, Bush, Benton and Osborne. He contends that he was prejudiced because of the spillover effect of evidence relating solely to the latter two conspiracies. He claims that the case against him was otherwise weak because it rested almost entirely upon the testimony of Richard Williams and the corroboration testimony of his brother Donnel Williams, one an accomplice and both "unsavory characters." He claims further prejudice from the evidence establishing that Bush and Osborne were Atlanta policemen using stolen cars to transport the marijuana. Appellant

theorizes that he was damaged by inferences from that testimony because the evidence also showed that he operated an automobile business in Atlanta.

The government responds that the proof established a single conspiracy that had as its purpose the distribution of marijuana from Texas to the Atlanta, Georgia, area. According to the government's theory, the conspiracy initially consisted of appellant, Cosby, Fuller and Smith in Atlanta and Williams in Texas; upon Williams' withdrawal, Rutledge, Bush, Benton, Osborne and Wedel were substituted as the Texas source. The government argues alternatively that appellant was not prejudiced by any alleged variance because the direct testimony of Williams established that at a minimum appellant was engaged in a conspiracy with Williams and Cosby to possess marijuana with the intent to distribute.

█ Even assuming that there was a variance between indictment and proof,[4] appellant and the government agree that "[v]ariance from the indictment is not always prejudicial, nor is prejudice assumed." *United States v. Baldarrama*, 566 F.2d 560, 566 (5th Cir.), *cert. denied*, —— U.S. ——, 99 S.Ct. 140, 58 L.Ed.2d 145 (1978). Under *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), the test is not whether there is enough independent evidence to support the result but whether the alleged error had "substantial influence." After a thorough review of the record, we must conclude that any alleged variance did not prejudice appellant. The direct testimony of Richard Williams and the corroboration testimony of his brother Donnel Williams unequivocally established a conspiracy involving at least appellant, Richard Williams, Cosby, Fuller and Smith. Appellant was tried only with those in his immediate group, and he does not assert

---

**2.** Lowman was subsequently acquitted by the trial judge on the ground of insufficient evidence.

**3.** *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

**4.** Because of our disposition of this issue on the ground that any alleged variance was not prejudicial, we need not undertake the "frustrating and challenging task" of determining whether the evidence proved one or several conspiracies. *See United States v. Perez*, 489 F.2d 51, 57 (5th Cir. 1973), *cert. denied*, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974).

prejudicial joinder. After a relatively short trial of three days, the jury had to consider the guilt or innocence of only four persons. Under these circumstances, we cannot say that evidence relating to the other groups had a substantial influence on the jury's verdict convicting appellant of conspiracy to possess marijuana with intent to distribute. *See United States v. Baldarrama, supra; United States v. Beil,* 577 F.2d 1313, 1316–17 (5th Cir. 1978), *cert. denied,* —— U.S. ——, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979).

■ Appellant's second contention concerns the admission of testimony by Richard Williams that during the course of his marijuana dealings with Fuller and Cosby, each had told him on separate occasions that the marijuana was being purchased for appellant.[5] Appellant objected to the testimony as hearsay but the trial court admitted the statements, presumably on the basis of Fed. R.Evid. 801(d)(2)(E) as statements by co-conspirators during the course and in furtherance of the conspiracy.

Appellant claims that the statements were erroneously admitted because there is no indication that they were made in furtherance of the conspiracy. We disagree. In *United States v. James,* 510 F.2d 546, 549 (5th Cir.), *cert. denied sub nom. Vasquez v. United States,* 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975), we noted that although the phrase "in furtherance of the conspiracy" has a talismanic ring to it, the phrase must not be applied too strictly or the purpose of the exception would be defeated. The statements here objected to were each made by one conspirator to a fellow conspirator identifying yet another conspirator as the ultimate purchaser of the marijuana. While those statements may not have been necessary to the conspiracy, we cannot say that they were not intended to further the conspiracy. From those statements Williams could infer that he was dealing with agents rather than principals and that the operation he was supplying could be larger than expected. Certainly such information could have been intended to affect future dealings between the parties. Moreover, it has been held that a statement by a person acting as a connection informing the ultimate purchaser of the identity of the source is a statement in furtherance of the conspiracy. *See, e. g., United States v. Carlson,* 547 F.2d 1346, 1362 (8th Cir. 1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977). We see no basis for a legal distinction between that situation and the situation here, where the person acting as a connection informed his source of the identity of the ultimate purchaser.[6]

■ Finally, appellant contends that he was prejudiced by rearraignment in mid-trial in the presence of the jury. After the first day of testimony, one of the defense counsel informed the prosecutor that he planned to move for a mistrial at the close of the government's case on the ground that the government had failed to arraign the defendants in the presence of the jury before the introduction of the evidence in accordance with the established practice in the Southern District of Texas.[7] The court allowed the prosecutor to remedy the error

---

**5.** Williams sold marijuana to Fuller, Cosby and Smith for over a year before he was introduced to and dealt directly with appellant.

**6.** Appellant also argues that the trial court erred by failing to make a preliminary inquiry outside the presence of the jury concerning the fulfillment of the 801(d)(2)(E) conditions. This argument must fail because it is based entirely on Part V of the opinion in *United States v. James,* 576 F.2d 1121, 1127–32 (5th Cir. 1978), which has since been withdrawn. *United States v. James,* 590 F.2d 575 (5th Cir. 1979) (en banc). The procedure established by the en banc court was expressly made prospective only. *Id.* at 583.

**7.** While we find no prejudice to this defendant who announced to the jury that he pled "not guilty" to the indictment when it was read in open court at mid-trial, we feel constrained to comment that the practice of always rearraigning a defendant as a part of trial proceedings puts a defendant who wishes to stand mute at a strategic disadvantage. We see no need of the system for this formality and, because it carries a potential for prejudice, we suggest, in the exercise of this court's supervisory power, that it be discontinued.

by rearraigning the defendants on the second day of trial, over appellant's objections. Appellant concedes that the government could have read the indictment during closing argument, that the judge could have read the indictment as part of his charge, and that the jury customarily has the indictment in the jury room during deliberation. He contends nevertheless that he was prejudiced because the rearraignment effectively gave the government an opportunity to supplement its opening argument at a strategic time in the trial. Appellant's allegations of prejudice are speculative if not frivolous. The indictment was read on the second day of a three-day trial; appellant does not explain why that was such a strategic time. The prosecutor simply read the indictment; he did not make any statements. The court adequately instructed the jury that the indictment was not evidence. In these circumstances, we cannot conceive of any prejudice attending appellant's rearraignment in mid-trial.

For the reasons stated above, the judgment of the trial court is AFFIRMED.