AINSWORTH, Circuit Judge:
Defendants James C. Beil and Daniel Michael Bonnetts were convicted following a bench trial of conspiring under 18 U.S.C. § 371 to violate the Dyer Act, 18 U.S.C. §§ 2312, 2313.[1] The district court sentenced each to three years’ imprisonment. In this appeal the defendants challenge the validity of their convictions on two grounds, neither of which we find meritorious. Accordingly, we affirm the convictions.
The facts in this case are stipulated and fully set forth as Appendix A. These facts demonstrate that between September 26, 1973 and July 19, 1975, defendant Beil stole two automobiles in Illinois and sold them in Illinois to Charles Raymond Jordan, who then transported them to Columbus, Georgia, and sold at least one of them to Leon Brooks Murdock. Between July 9, 1974 and February 17,1975, defendant Bonnetts stole three automobiles in Illinois and sold them in Illinois to Charles Raymond Jordan, who then transported at least two of them to Columbus, Georgia and thereafter back to Chicago, Illinois, where he sold them to Nicholas Katinas.
Beil and Bonnetts contend first that the district court erred in not granting their motion for judgment of acquittal, because even though the automobiles they admittedly stole did move in interstate commerce after the theft, the Government failed to prove that the defendants actually knew the automobiles would move in interstate commerce when they sold the cars to Jordan. According to Beil and Bonnetts, such knowledge is an essential element of the offense of conspiring to violate the Dyer Act. We disagree:
By the language itself of the Dyer Act, set forth in footnote 1, the only knowledge required by the statute is that the property was stolen. Knowledge that the property has moved or will move in interstate commerce is not an element of the offense. See, e. g., Overton v. United States, 5 Cir., 1968, 405 F.2d 168; Bibbins v. United States, 9 Cir., 1968, 400 F.2d 544. Cf. United States v. Doolittle, 5 Cir., 507 F.2d 1368, 1372, aff’d en banc, 5 Cir., 518 F.2d 500, cert. denied, 423 U.S. 1008, 96 S.Ct. 439, 46 L.Ed.2d 380 (1975) (18 U.S.C. § 1952). Beil and Bonnetts were not charged with violating the Dyer Act itself, however, but with conspiring to violate it under the general conspiracy statute, 18 U.S.C. § 371. It is clarion clear that “in order to sustain a judgment of conviction on a charge of conspiracy to violate a feder *1315 al statute, the Government must prove at least the degree of criminal intent necessary for the substantive offense itself.” United States v. Feola, 420 U.S. 671, 686, 95 S.Ct. 1255, 1265, 43 L.Ed.2d 541 (1975). In this respect the Government’s task was not difficult; both defendants knew that the automobiles sold to Jordan were stolen because they themselves were the admitted thieves. The only remaining question, therefore, is whether conspiracy to violate the Dyer Act requires more — in this case that the defendants knew that the cars would move in interstate commerce.
In United States v. Feola, supra, the Supreme Court held that knowledge that the intended victim is a federal officer is not a requisite for the crime of conspiracy under 18 U.S.C. § 371 to violate 18 U.S.C. § 111, which prohibits an assault upon a federal officer while he is engaged in the performance of his official duties. The Court found first that in order to incur criminal liability under 18 U.S.C. § 111, an assailant need not be aware that his victim is a federal officer. 420 U.S. at 684, 95 S.Ct. at 1264. The Court then rejected the defendant’s argument that conviction of conspiracy under 18 U.S.C. § 371 to violate Section 111 requires such an awareness, because, found the Court, the two values underlying the law of conspiracy would not be served thereby. The first of these values is the protection of society from the dangers of concerted criminal conduct. The Court stated “[tjhat individuals know that their planned joint venture violates federal as well as state law seems totally irrelevant to that purpose of conspiracy law which seeks to protect society from the dangers of concerted criminal activity.” 420 U.S. at 693, 95 S.Ct. at 1268. The second value underlying the law of conspiracy pertains to the fact that conspiracy is an inchoate crime. At some point between preparation and consummation of a crime, the likelihood that the crime will be committed is sufficiently great and the criminal intent is sufficiently formed to justify intervention of the criminal law. The law of conspiracy protects society by defining this point of intervention.[2] In this regard the Court stated:
Again, we do not see how imposition of a strict “anti-federal” scienter requirement would relate to this purpose of conspiracy law. Given the level of intent needed to carry out the substantive offense, we fail to see how the agreement is any less blameworthy or constitutes less of a danger to society solely because the participants are unaware which body of law they intend to violate. Therefore, we again conclude that imposition of a requirement of knowledge of those facts that serve only to establish federal jurisdiction would render it more difficult to serve the policy behind the law of conspiracy without serving any other apparent social policy.
420 U.S. at 694, 95 S.Ct. at 1268-69.
Following the Supreme Court’s lead in Feola, we find with respect to the Dyer Act that the two values underlying the law of conspiracy would not be served by requiring that those who conspire to violate the Act know that stolen vehicles will move or have moved in interstate commerce in order to incur criminal liability. This result is consistent with our holding in United States v. Muncy, 5 Cir., 1976, 526 F.2d 1261. There the trial court instructed the jury that knowledge that the stolen property had moved in interstate commerce was not an essential element of the offense of conspiring to violate 18 U.S.C. § 2315, which provides in pertinent part:
Whoever receives, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, or pledges or accepts as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, moving as, or which are a part of, or which constitute interstate or foreign *1316 commerce, knowing the same to have been stolen, unlawfully converted, or taken . . [s]hall be fined not more than $10,000 or imprisoned not more than ten years, or both.
We found no error in the district court’s instruction because “knowledge of jurisdictional facts is not required in determining guilt of either the substantive offense or the conspiracy offense.” 526 F.2d at 1264.[3] Moreover, in United States v. Kelly, 5 Cir., 1978, 569 F.2d 928, 934, this Court held that “[kjnowledge or foreseeability of a victim’s travel in interstate commerce” need not be proven when the defendant was charged with causing and conspiring to cause a person to travel in interstate commerce in execution of a scheme to defraud in violation of 18 U.S.C. §§ 2, 371, and 2314. See United States v. Greer, 7 Cir., 1972, 467 F.2d 1064, 1071-72, cert. denied, 410 U.S. 929, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973); Gurleski v. United States, 5 Cir., 1968, 405 F.2d 253, 268-69, cert. denied, 395 U.S. 981, 89 S.Ct. 2140, 23 L.Ed.2d 769 (1969). The defendants’ contention is therefore without merit.
Beil and Bonnetts next contend that there was insufficient evidence to convict them of a conspiracy. Beil contends that the Government failed to show that he had any agreement with Jordan, and Beil and Bonnetts together contend that the Government failed to show that they had any agreement with each other, that they had knowledge of each other’s dealings with Jordan, or that they had knowledge of Jordan’s later dealings in interstate commerce with Murdock and Katinas.
In considering claims of insufficient evidence, this Court must examine the evidence in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); United States v. Cadillac Overall Supply Co., 5 Cir., 1978, 568 F.2d 1078, 1080, 1084 (bench trial). Beils’ contention that he had no agreement with Jordan and both defendants’ contention that they had no knowledge of Jordan’s later sales in interstate commerce are refuted by the stipulated facts, which provide that both Beil and Bonnetts “understood when they sold the automobiles ... to Charles Raymond Jordan that Jordan, acting in concert with others, was planning to dispose of the said automobiles either by sale or by selling said automobiles as spare parts.”[4] Although Beil and Bonnetts do not expressly so state, it appears that their other contentions— that they had no agreement with each other and that they had no knowledge of each other’s dealings with Jordan — amount to the argument that there was no single conspiracy. Thus, according to the defendants, although the Government proved individual conspiracies between Beil and Jordan and Bonnetts and Jordan, the Government allegedly did not prove a single conspiracy among Beil, Bonnetts, and Jordan, which was the type of conspiratorial conduct alleged in the indictment.
We recently addressed a similar contention in United States v. Baldarrama, 5 Cir., 1978, 566 F.2d 560. We rejected the Baldarrama defendants’ contention on two grounds, the second of which is dispositive of the defendants’ contention in the instant case. After noting that “[vjariance from the indictment is not always prejudicial, nor is prejudice assumed,” 566 F.2d at 566, citing, e. g., Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935), we found in Baldarrama that the “defendants completely failed to demonstrate any prejudice arising out of a possible variance between the offenses proved at trial [allegedly the separate conspiracies] and those charged in the indictment [the single conspiracy].” 566 F.2d at 566. In this regard the Baldarrama defendants relied on United States v. Levine, 5 Cir., 1977, 546 F.2d 658, where the Court found improper joinder of defendants under Fed.R. *1317 Crim.P. 8(b), but none of the Baldarrama defendants asserted any prejudicial joinder in their case. Moreover, “the nature of the case was such that the jury could not easily have been confused and failed to consider individual guilt.” 566 F.2d at 566-67. Similarly, in this case defendants Beil and Bon-netts also have shown no prejudice resulting from a possible variance between the two conspiracies allegedly proved at trial and the single conspiracy charged in the indictment. Like the Baldarrama defendants, the defendants here do not assert prejudicial joinder, and the possibility of jury confusion is nonexistent because Beil and Bonnetts were tried before the court. Accordingly, their claim is meritless.
Having considered each of the defendants’ contentions and finding no error, their convictions are
AFFIRMED.
APPENDIX A
(a) On or about August 13, 1974, at Schaumburg, Illinois, Daniel Michael Bon-netts stole a 1974 Lincoln Continental IV, VIN 4Y89A828487, from the possession of Merle H. Lahti.
(b) On or about the same date, Daniel Michael Bonnetts sold the said automobile to Charles Raymond Jordan for $600.00 in Illinois.
(c) Between August 13, 1974, and March 24, 1975, Charles Raymond Jordan transported the said automobile from Illinois to, among other places, Columbus, Georgia and thereafter to Chicago, Illinois, where it was sold by Charles Raymond Jordan to Nicholas Katinas.
(d) On or about July 9, 1974, at Worth, Illinois, Daniel Michael Bonnetts stole a 1974 Ford Thunderbird, VIN 4J87A133837, from the possession of Norman Steigert.
(e) On or about July 9, 1974, Daniel Michael Bonnetts sold the automobile specified in subparagraph (d), above, to Charles Raymond Jordan in Illinois.
(f) Between July 9, 1974, and February 13, 1975, Charles Raymond Jordan transported the automobile specified in subpara-graph (d), above, from Illinois to, among other places, Columbus, Georgia and thereafter to Chicago, Illinois where it was sold by Charles Raymond Jordan to Nicholas Katinas.
(g) On or about February 17, 1975, at Chicago, Illinois, Daniel Michael Bonnetts stole a 1974 Lincoln Continental Mark IV, VIN 4Y89A835241, from the possession of David Hussman.
(h) On or about February 17, 1975, Daniel Michael Bonnetts sold the automobile specified in subparagraph (g), above, to Charles Raymond Jordan in Illinois.
(i) On or about September 26, 1973, at Chicago, Illinois, James C. Beil stole a 1973 Ford Thunderbird, VIN 3J87N191094, from the possession of Eugene Baer.
(j) On or about September 26, 1973, James C. Beil sold the automobile specified in subparagraph (i), above, to Charles Raymond Jordan in Illinois.
(k) Between September 26, 1973, and March 14, 1974, Charles Raymond Jordan arranged for the automobile specified in subparagraph (i), above, to be transported to Columbus, Georgia where it was sold by Charles Raymond Jordan to Leon Brooks Murdock, a used car sales person.
(l) On or about July 19,1975, at Chicago, Illinois, James C. Beil stole a 1975 Cadillac Elderado, VIN 6L47S5Q230589 from the possession of Joseph Edward Rorem.
(m) On or about July 19, 1975, James C. Beil sold the automobile specified in subpar-agraph (1), above, to Charles Raymond Jordan in Illinois.
(n) Between July 19, 1975 and January 13, 1976, Charles Raymond Jordan transported the automobile specified in subpara-graph (7), above, to Columbus, Georgia.
(o) Daniel Michael Bonnetts and James C. Beil understood when they sold the automobiles described in subparagraphs (a) through (n), inclusive, to Charles Raymond Jordan that Jordan, acting in concert with others, was planning to dispose of the said automobiles either by sale or by selling said automobiles as spare parts.
*1318 (p) Although Daniel Michael Bonnetts and James C. Beil acknowledge the interstate transportation of the aforedescribed automobiles after they were sold to Charles Raymond Jordan, neither Daniel Michael Bonnetts nor James C. Beil knew that the said automobiles would be removed from Illinois by Jordan after he obtained possession of them. In short, Daniel Michael Bon-netts and James C. Beil had no knowledge, actual or implied, that any automobile which they stole and sold to Charles Raymond Jordan would ever leave Illinois.

. 18 U.S.C. § 371 provides:
If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.
18 U.S.C. § 2312 provides:
Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.
18 U.S.C. § 2313 provides:
Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

. The law of conspiracy identifies the agreement to engage in a criminal venture as an event of sufficient threat to social order to permit the imposition of criminal sanctions for the agreement alone, plus an overt act in pursuit of it, regardless of whether the crime agreed upon actually is committed.
420 U.S. at 694, 95 S.Ct. at 1268.

. The defendants attempt to distinguish Muncy by pointing out that there the defendant’s conduct occurred after the interstate movement while in this case the defendants’ conduct occurred before the interstate movement. We view that as a distinction without a difference.

. As we have already held it was not necessary for the Government to prove that the defendants knew the stolen cars would move in interstate commerce.