Rickey Lee Brown was charged with the unlawful sale of marijuana. At trial, the appellant was found guilty as charged and the trial court set sentence at 12 years' imprisonment in the penitentiary.
The appellant's counsel filed a motion for new trial challenging the weight and sufficiency of the evidence which, after a hearing, was overruled.
The appellant gave notice of appeal to the Court of Criminal Appeals on August 4, 1981. On August 7, 1981, this court dismissed this appellant's appeal as being untimely filed.
Thereafter, the appellant filed a petition for writ of error coram nobis, contending that his trial counsel was inadequate in that he had been denied the effective assistance of counsel, by failing to perfect a timely appeal to this court. The trial court then conducted a full hearing squarely on the merits of the appellant's petition for writ of error coram nobis.
The following order was entered by the Circuit Court: (R. 80-82)
"ORDER
 "The Defendant, Rickey Lee Brown, was tried in the Circuit Court of DeKalb County, Alabama, on March 17, 1981, and found guilty of the offense of selling marijuana.
 "On April 20, 1981, the Defendant filed a Motion for New Trial, and on July 28, 1981, the Defendant's Motion for New Trial was denied.
"On April 22, 1981, the Defendant was sentenced.
 "On August 4, 1981, the Defendant filed Notice of Appeal to the Court of Criminal Appeals of Alabama, and on August 7, 1981, the Court of Criminal Appeals of Alabama dismissed the Defendant's appeal for having been untimely filed.
 "It is well established, and uncontroverted, that the Defendant was aware at the time of sentencing that he had a right to an appeal and that he expressed to his Court appointed trial counsel immediately after sentencing his desire to appeal his conviction. The Defendant's Court appointed counsel failed to file a timely appeal, and the Defendant, through no fault of his own, was denied an appeal as a result thereof. The Supreme Court of Alabama, in the case of Ex Parte State of Alabama Petition For Writ of Certiorari To The Court of Criminal Appeals (Re: James Longmire v. State of Alabama), [443 So.2d 1265] 17ABR 356 (October Term, 1982-83) granted an out-of-time appeal to a Defendant in a strikingly similar case. In the Longmire case, the Supreme Court relies heavily on the authority of Daniels v. Alabama, 487 F.2d 887
([5th Cir.] 1973) wherein the Defendant was deemed to be `entitled to have his writ granted, subject to the State's retrying him, or granting him an out-of-time appeal.'
 "The traditional relief available on Coram Nobis is a new trial. Robinson v. State, 419 So.2d 283 (1982). The Fifth Circuit Court of Appeals, however has held that . . . when a lawyer, by definition a member of a learned profession and a member of the bar of the court, does not perform his promise to his client that an appeal will be taken, fairness requires that the deceived defendant be granted an out-of-time appeal. Perez v. Wainwright, 640 F.2d 596 ([5th Cir.] 1981).
 "The Court of Criminal Appeals of Alabama construes Longmire and Perez to stand for the proposition that the `traditional relief' available on coram nobis has been expanded to include the granting of an out-of-time appeal, and opines that `an out-of-time appeal is significantly less burdensome to the State than would be a new trial.' Peterson v. State, 428 So.2d 201 (1983).
 "In Peterson the Court of Criminal Appeals of Alabama remanded the case to the trial Court for the purpose of its granting either a new trial or an out-of-time *Page 265 
appeal. Inasmuch as the Court of Appeals could have granted the out-of-time appeal without remanding the case to the trial Court, it is inescapable that Longmire and its progeny authorize the trial Court to elect the Defendant's appropriate relief.
 "In the instant case, this Court agrees with the conclusion of the Court of Criminal Appeals that an out-of-time appeal is less burdensome for the State than a new trial. It is, therefore,
 "ORDERED, ADJUDGED and DECREED that the Defendant's Petition For Writ of Error Coram Nobis should be, and is hereby, GRANTED, and the Defendant is hereby granted an out-of-time appeal.
"DONE this 7 day of December, 1983.
 /s/ David A. Rains
David A. Rains, Circuit Judge"
The trial court then directed that a complete copy of appellant's original trial transcript be included as a part of the appeal to this court.
Freddie Strength, an undercover narcotics agent for the State of Alabama, testified that in June, 1979, he was working on assignment in several north Alabama counties. He testified that he met with an informant named Ray Cisco who accompanied him to a meeting with the appellant, Rickey Lee Brown, at the appellant's body shop, located in DeKalb County, Alabama, on June 16, 1979. Strength was introduced at this point and a conversation ensued with reference to the purchase of some marijuana. Strength testified that he told Brown that he was there to "buy a pound of marijuana". (R. 17). Brown indicated that he did not have same with him at that time but said that he would meet with them later and suggested that they meet at Cisco's trailer later that evening. Brown did not appear, but at a point later that evening, the men got together at the house trailer of one Roger Dale Buttram. At that time there was a considerable discussion concerning the purchase of marijuana. The appellant indicated it was necessary for him to make a run to Trenton, Georgia, to obtain some marijuana. (R. 19). Strength related the following: (R. 20-21).
"Q. Tell us what transpired at that time?
 "A. I was talking to Mr. Brown about different prices of marijuana, and about different lots, five pound lots, ten pound lots. He said he didn't know and Buttram walked up. He asked Mr. Buttram about how much, you know, five pounds or ten pounds, and Buttram replied it would be about three eighty a pound.
 "MR. WEAR: Judge, we are going to object to what Mr. Buttram might have said.
"COURT: Was the defendant present?
"A. Yes, sir.
"COURT: Overruled.
"Q. Go ahead.
 "A. Three eighty a pound in five pound lots, and three sixty-five a pound in ten pound lots, and Mr. Brown said: `Well, that's not right' and Buttram said: `It is according to what we give for it to start with' and Buttram left."
Strength testified that he next saw Brown at 11 a.m. on Sunday morning, June 17, 1979. This was at Brown's Body Shop in DeKalb County. He stated that the conversation took place shortly after 9:30 that morning when Ray Cisco first contacted him. (R. 22-23).
"Q. Okay, and you saw him the next day, you said?
 "A. Yes, sir, about 9:30 Ray Cisco contacted me and said that Brown had been in contact with him and if I wanted the marijuana I would have to meet back down at his shop, body shop.
"Q. At whose body shop?
"A. At Brown's body shop.
"Q. And, did you meet Mr. Brown at his body shop?
"A. About 11:00 A.M. on that Sunday morning.
"Q. And, who all was present, sir?
 "A. It was Rickey, myself, Ray Cisco, Roger Dale Buttram and some other *Page 266 
white male was there who was working on a red truck, putting a motor in it.
 "Q. And, what was the nature of the conversation on that morning.
 "A. Rickey told us it would be a few minutes, you know, told Roger — Roger was under it passing down the motor to him, and told him to hurry up and for us to wait, which we did until they finished.
 "Q. And, once that job had been completed, what transpired regarding marijuana?
 "A. I followed Rickey. He said: `Come on' and I followed Rickey to his car which was parked in his daddy's driveway.
"Q. How did you know it was his father's driveway?
"A. Brown referred to it as his daddy's place.
"Q. The accused referred to his daddy's place?
"A. Right."
After leaving the body shop, the men drove to the house trailer of Buttram. There, Buttram actually handed some bags of marijuana to the appellant who in turn handed them to the agent, Strength. Strength testified he simulated smoking marijuana with Buttram, Brown and Cisco. Strength then described the purchase in question as follows: (R. 25-26).
 "Q. While Mr. Wear is looking at the package there, let me ask you if you know, or were you at that time, familiar with the DeKalb County lines, so that you know you were in DeKalb County when this purchase itself took place?
"A. Yes, sir, I was in DeKalb County.
 "Q. I'll ask you if you will, please, sir, look at what has been marked as State's Exhibit # 1, and tell us if you can identify that?
 "A. This is a white paper sack, on which I wrote relevant case information on.
"Q. Tell us what you wrote on it?
 "A. I put down a case number, 122820, representing narcotics, 28 DeKalb County, the 20th case made, Rickey Brown and Roger Buttram, DeKalb County, Alabama.
"Q. When did you write that on there?
"A. That was on Sunday.
"Q. That Sunday afternoon?
"A. Yes.
"Q. Where did you get the white paper bag, sir?
 "A. Well, after everybody — after simulating smoking marijuana with them, Buttram and Cisco left to show Cisco a house, or a shed of some type, it was out of my presence, talked about roofing, so — Cisco is a roofer, and I paid Rickey Brown $400.00 for the marijuana.
 "Q. Do you remember the denomination of the bills, sir?
"A. It was twenty dollar bills, 20 of them.
"Q. Twenty, twenty dollar bills?
"A. Yes, sir.
"Q. And, where did you get the white bag?
 "A. Well, Buttram and Cisco come back in and I asked them if they had a bag that I could put this in, and Buttram gave me the white paper bag.
 "Q. All right, would you please remove the contents of the bag.
"A. This?
"Q. Yes, sir.
 "A. This, I first sealed — not sealed, but I placed inside it a blue-lined white paper with the date and time, and my name on it, which was 6-17-79, 12:20 p.m., F.L. Strength. I placed it inside the bag, zipped it back and sealed it again and labeled and dated with: `FLS, 6-17-79,' which I in turn put in here.
"Q. And, what did you do with the marijuana?
 "A. Took it and placed it back in the white paper sack and wrote up the information on the white paper sack and give it to Agent Mike Kirk.
"Q. Where was he when you gave it to him?
"A. He was in the room with me.
"Q. Where? *Page 267 
 "A. It was a Holiday Inn, Room 229, at Scottsboro, Alabama."
Agent Kirk testified that he then took the marijuana which he had taken from Strength and delivered it to Ms. Martha Odom at the crime lab. Ms. Odom's analysis of the material as marijuana was stipulated into evidence as being 422 grams of marijuana and the date of the report is July 9, 1979.
 I
Two issues are presented on appeal of this conviction.
As to the first issue with reference to the right of the appellant to receive a full review by way of belated or out-of-time appeal, we are of the opinion that the trial court properly applied the law to the factors which arose in this instance. It determined there was a misunderstanding as to the time in which the appellant's counsel was to perfect his appeal. This was through no fault of the appellant himself and he was, in fact, an indigent who at all times expressed his desire to appeal his conviction. The Supreme Court of Alabama has expressly approved the procedure here followed by the trial court in an opinion known as Longmire v. State, 443 So.2d 1265
(1982). This action is not without prior precedent in Alabama. This court noted in Ellison v. State, 55 Ala. App. 50,312 So.2d 632 (1975), the following:
 "The Supreme Court of Alabama, in Allison v. State, 281 Ala. 193, 200 So.2d 653 (1967) was confronted with this same problem, and proceeded to accord appellate review of the original trial proceedings as therein outlined. The court also accorded review of the original trial proceedings through a `coram nobis appeal' in Aldridge v. State, 278 Ala. 470, 179 So.2d 51 (1965). Likewise, this court has similarly accorded appellate review in Bates v. State, 52 Ala. App. 257, 291 So.2d 315 [351] (1974)."
See also Baldwin v. State, 342 So.2d 940 (1977) and Petersonv. State, 428 So.2d 201 (Ala.Crim.App. 1983).
Based on the foregoing authorities we are of the opinion that the trial court here properly determined that the appellant was entitled to a full out-of-time appeal and review in this court.
 II
The second issue is the sufficiency of the State's evidence when tested by appellant's motion to exclude made at trial at the conclusion of the State's case and also by his timely file motion for new trial which challenged both the weight and sufficiency of the State's evidence.
We have carefully considered this case and all aspects of the transcript of the evidence in an effort to be certain that due process of law is here fully accorded this appellant. We are of the opinion that the undercover officer, Strength, properly identified the appellant in his three conversations at three different locations with the appellant and properly identified him as being the Rickey Lee Brown to whom he paid the funds and obtained the marijuana in question. This was a payment of $400.00 for 422 grams of marijuana.
The State here sufficiently established a proper chain of custody and the identity of the prohibited substance as marijuana. Slaughter v. State, 411 So.2d 819 (Ala.Crim.App. 1982) and authorities cited. We are also of the opinion that the State of Alabama properly established a prima facie case of the sale of the marijuana in question by the appellant, Brown, to the undercover officer, Strength. Sterling v. State,421 So.2d 1375 (Ala.Crim.App. 1982) and authorities therein cited.Slaughter v. State, supra; Radney v. State, 342 So.2d 942
(Ala.Crim.App. 1977), cert. denied, 342 So.2d 947 (Ala. 1977).
We have carefully reviewed this entire transcript, including the complete original trial proceedings and evidence. We find this record to be free of error.
The judgment of the trial court is due to be and the same is hereby affirmed.
AFFIRMED.
All the Judges concur. *Page 268