526 So.2d 34 (1987)
Mathew Charles JOHNSON
v.
STATE.
6 Div. 285.
Court of Criminal Appeals of Alabama.
June 9, 1987.
Appeal Following Remand March 22, 1988.
*35 Mathew Charles Johnson, pro se.
Gregory A. Kennemer, Birmingham, for appellant.
Don Siegelman, Atty. Gen., and Martha Gail Ingram, Asst. Atty. Gen., for appellee.
TYSON, Judge.
Mathew Charles Johnson appeals from the denial of his petition for writ of error coram nobis by the circuit court without conducting an evidentiary thereon.
The appellant avers that he was indicted by the Grand Jury of Jefferson County in October, 1980 for the offense of robbery in the first degree in violation of § 13A-8-41, Code of Alabama 1975 as amended. Appellant further avers that he entered a not guilty plea, a jury trial was held and the appellant was sentenced to life imprisonment without parole. The appellant avers that an attempted appeal was dismissed because of procedural errors. The appellant further avers that he is innocent of the charge and has a valid defense.
*36 The appellant avers that the trial court's instructions to the jury were erroneous and constitutionally defective, that he was entitled to have a full review on the appeal of this conviction and that his counsel failed to timely obtain and perfect an appeal of his conviction to the Court of Criminal Appeals of Alabama. Appellant further avers that he was, thereby, denied the effective assistance of counsel within the meaning of the U.S. Constitution. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Also Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).
Because the circuit court dismissed and denied this petition without conducting an evidentiary hearing, this cause is remanded to the circuit court with instructions that a full evidentiary hearing be conducted on the merits of the appellant's allegations, after the appointment of counsel to assist the appellant. See Rule 20, Alabama Temporary Rules of Criminal Procedure, specifically Rule 20.2(c) effective April 1, 1987.
For the reasons shown, this cause is remanded with instructions that an evidentiary hearing be conducted.
REMANDED WITH INSTRUCTIONS.
All the Judges concur.

Appeal Following Remand
TYSON, Judge.
Matthew Charles Johnson was indicted for the offense of robbery in the first degree in violation of § 13A-8-41, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment" and the trial judge sentenced the appellant to life imprisonment without parole, as a Habitual Felony Offender.
At 12:03 a.m., on July 13, 1980, three black males entered Mrs. Winner's Fried Chicken located at 11 Graymont Avenue in Birmingham, Alabama. One of the men went to the drive-through window cash register and pointed a gun at Anthony Soles. Soles opened the cash register and was ordered to the floor. This gunman removed the money from the drive-through cash register.
One of the other men went to the front register and pointed a gun at Venus Robinson who was working this register. Robinson identified this gunman as the appellant. At some point, Robinson threw up her hands and the appellant said, "Put your hands down, put your hands down." (R. 133). The appellant told Robinson to open the cash register and give him the money. The third male, who also had a gun, then took the money from the register and put it in a bag. After taking the money from the register, the third gunman said that it wasn't enough money. Elizabeth Null, who was also working at Mrs. Winner's that night, told the gunmen that there was more money in the drop box and that Soles had the keys to the drop box.
Soles threw one of the gunmen the keys to the drop box. This gunman then opened both drop boxes and took the money out of these. The three men then left. Approximately $700.00 was taken from Mrs. Winner's Fried Chicken by the three gunmen that night.

I
Timely notice of appeal was filed in this case in the trial court. However, the appellant's attorney failed to file a brief in this case on appeal and the appeal was dismissed by this court. The appellant then filed a petition for writ of error coram nobis in the Jefferson County Circuit Court. The petition alleged "ineffective assistance of counsel" due to the appellant's attorney's failure to file a brief in this case. The petition was denied by the trial court. On appeal, this court remanded this case to the trial court for an evidentiary hearing on this issue.
At the evidentiary hearing, the trial court determined that the appellant was not at fault in the dismissal of his appeal and that he was "prejudiced by the dismissal." The trial judge recommended the appellant be granted an "out-of-time appeal." Upon the trial judge's recommendation, this court granted this appellant an out-of-time appeal. This appeal is now *37 properly before this court. See Longmire v. State, 443 So.2d 1263 (Ala.Crim.App. 1981), rev'd, 443 So.2d 1265 (Ala.1982), on remand, 443 So.2d 1270 (Ala.Crim.App. 1983); Brown v. State, 460 So.2d 263 (Ala. Crim.App.), cert. denied, 460 So.2d 263 (Ala.1984); Jones v. State, 495 So.2d 722 (Ala.Crim.App.1986).

II
The appellant contends that Venus Robinson's identification of him should have been suppressed because the line-up identification procedure was unduly suggestive. The following facts were adduced at the suppression hearing on this matter.
Howard Miller, who investigated this robbery for the Birmingham Police Department, stated that Anthony Soles and Elizabeth Null viewed a line-up in connection with this case on July 28, 1980. Miller testified that neither Soles nor Null picked anyone out of this line-up. On July 29, 1980, another line-up was held and Soles, Null and Venus Robinson viewed this lineup. This line-up consisted of six black males, ranging in age from twenty to thirty-one years of age, in height from 5'8" to 6'1", and in weight from 128 to 187 pounds. Miller testified that the three witnesses viewed the line-up separately and were instructed not to discuss the line-up among themselves. Miller never suggested to any of the three whether or not anyone should be picked from the line-up at issue.
All three of the witnesses identified Willie Lidge from the line-up as the man who went to the drive-through window and register. Both Null and Robinson identified this appellant as the man who came to the front register. Miller stated that the witnesses were positive about their identifications.
Elizabeth Null testified that she picked Willie Lidge and the appellant out of the second line-up that she viewed. She further stated that she had also picked two people from the first line-up but was told they were the wrong people. After she picked out Lidge and the appellant from the second line-up, Null was told she had picked the right people. The trial judge agreed to suppress Null's identification of this appellant.
Venus Robinson testified that she picked Willie Lidge and the appellant from the only line-up that she viewed. Robinson testified that she immediately recognized the appellant as the man who came to her cash register. However, she asked Miller to have the men in the line-up say, "Put your hands down, put your hands down." She stated that, although she was positive about her initial identification of the appellant, she "wanted to make sure" because "you don't want to commit nobody to no crime or nothing like that until you put the voice and the face together." (R. 103).
After all six of the men repeated the words which the appellant said during the robbery, Robinson positively identified the appellant. She stated her identification was based on viewing the appellant on the night of the robbery. Robinson also testified that, after she made her identification, Miller told her she had picked out the right men.
The appellant specifically raises three issues concerning the line-up from which the appellant was identified by Robinson. First, he contends that his Fifth Amendment privilege against self-incrimination was violated when he was required to say the words uttered by one of the gunmen during the robbery.
There is a distinction between compulsion to utter statements of a testimonial nature, which violates the Fifth Amendment, and compulsion to utter words used by the perpetrator of a crime during the course of that crime. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967).
Requiring a person to use his voice as an identifying physical characteristic, as was the case here, is not in violation of the U.S. Fifth Amendment privilege against self-incrimination. See Wade; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Cooley v. State, 439 So.2d 193 (Ala.Crim.App.1983); Jones v. State, 431 So.2d 1367 (Ala.Crim.App.1983);
*38 Donahoo v. State, 371 So.2d 68 (Ala.Crim. App.), cert. denied, 371 So.2d 74 (Ala.1979).
Secondly, the appellant asserts that he should have been allowed access to counsel when he requested an attorney during the line-up. A defendant does not have a constitutional right to have counsel present at a pre-indictment line-up. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); Franklin v. State, 424 So.2d 1353 (Ala.Crim.App.1982), cert. denied, 424 So.2d 1353 (Ala.1983); Tankersley v. State, 448 So.2d 486 (Ala.Crim.App. 1984); Fisher v. State, 439 So.2d 176 (Ala. Crim.App.), cert. denied, 439 So.2d 176 (Ala.1983).
Thirdly, the appellant argues, citing Swicegood v. Alabama, 577 F.2d 1322 (5th Cir.1978), that Miller's remark to Robinson that she had picked the right men from the line-up, tainted her in-court identification of him. We must note that, at the suppression hearing, Officer Miller denied telling Robinson or Null that they had picked the "right men" at the line-up.
In Swicegood, the U.S. Fifth Circuit found that it was "very close" as to whether the line-up procedures employed in this case were impermissibly suggestive. The court then analyzed the "totality of the circumstances" in light of the five factors set out by the United States Supreme Court in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). These factors are: the opportunity of the witness to view the criminal at the time of the commission of the crime; the witness' degree of attention; the accuracy of the witness' prior description of the criminal suspect; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation. Neil, 409 U.S. at 199, 93 S.Ct. at 382.
In addressing the fourth factor, the level of certainty demonstrated by the witness at the confrontation, the U.S. Fifth Circuit in Swicegood stated that the in-court certainty of two witnesses who identified the defendant "could have been tainted ... by a police officer's remark after the line-up to the effect that [the witnesses] had chosen the `right man.'" Swicegood, 577 F.2d at 1329. However, the circumstances surrounding the line-up in Swicegood were very different from those in the case before this Court.
In Swicegood, the two victims viewed a line-up. After they first viewed the line-up, neither of them could make a positive identification and both chose different men as the likely robber. When the two victims viewed the line-up a second time, they both chose Swicegood as the robber and stated that they were positive about their identifications. In the case at bar, Robinson immediately recognized the appellant and made a positive identification of him after hearing his voice. Thus, we conclude that Robinson's in-court identification was not tainted by Miller's alleged statement after the line-up was over that she had "chosen the right men." The circumstances are very different here from those in Swicegood. Additionally, we note that conflicting evidence was presented on whether or not Officer Miller actually made the remark.
Although we are of the opinion that the line-up procedures in this case were not in any way suggestive, for caution's sake, we shall also analyze the "totality of circumstances" surrounding the line-up with the factors set out in Neil v. Biggers, supra.
The opportunity to view. Robinson testified that the appellant came to her register and held a gun in her face. She looked at the appellant's face during the course of the robbery which lasted from seven to ten minutes.
The degree of attention. The evidence shows that Robinson's attention was riveted on the appellant when he held the pistol in her face.
The accuracy of the description. Although the record is not clear as to which witness gave the police a description of the gunmen on the night of the robbery, the description of one of the gunmen was certainly similar to the appellant's description.
Witness' level of certainty. Robinson stated she immediately recognized this appellant upon seeing him in the line-up and *39 was positive of her identification after hearing his voice. She was also positive of her in-court identification.
The time between crime and confrontation. The robbery in this case occurred on July 23, 1980 and the line-up took place six days later on July 29, 1980.
Thus, we conclude that the line-up procedure used in this case was not so impermissibly suggestive as to create a substantial risk of misidentification which would taint Robinson's in-court identification of this appellant. See Jones v. State, 439 So.2d 824 (Ala.Crim.App.1983). Furthermore, Robinson stated that her in-court identification was based upon viewing the appellant on the night of the robbery. Therefore, there is an independent basis for her in-court identification of this appellant. See Coleman v. State, 487 So.2d 1380 (Ala.Crim.App.), cert. denied, 487 So. 2d 1380 (Ala.1986). We find no error here.

III
The appellant asserts that two of the prosecutor's remarks during closing argument were error.

A
"MR. VALESKA: I consider it a personal attack on meand I represent the State and Jefferson County District Attorney's Office, who you pay my salarywhen he says that Venus Robinson goes back there in my office yesterday and Miss Null and we talked about the case.
"MR. QUICK: I didn't say Venus Robinson, Your Honor. I'm going to have to object to that.
"THE COURT: He didn't say Venus Robinson." (R. 240.)
The appellant asserts on appeal that the prosecutor's remark concerning who pays his salary was "an attempt [by the prosecutor] to gain favoritism through personalization with the jury which hinges on economic influence." (Appellant's brief, p. xii).
However, his specific objection to the above-quoted remark at trial had nothing to do with the objection which the appellant now raises on this appeal.
A specific ground of objection waives all other grounds of objection not specified at trial. Murray v. State, 494 So.2d 891 (Ala.Crim.App.1986); Blackmon v. State, 449 So.2d 1264 (Ala.Crim.App. 1984).

B
"MR. VALESKA: Judge Cole determines whether you can hear the testimony on those line-ups or not. If they had been impermissible line-ups or unconstitutional line-ups his rights would have been violated and you never would have heard the testimony about those line-ups.
"MR. QUICK: I object to that, Your Honor.
"THE COURT: Overruled." (R. 240.)
The appellant contends on appeal that the prosecutor's remark here was a "direct misrepresentation of the rulings made by the Court, and intended by the prosecution to support and reinforce the weak evidence proffered by the State in an effort to indicate favoritism of both Judge Cole and the Court toward evidence admitted by the State with regard to the same line-ups." (Appellant's brief, p. xii).
The appellant did not specify these or any other grounds of objection to the prosecutor's remark which is quoted above. A general objection which does not specify grounds preserves nothing for our review. Meadows v. State, 473 So.2d 582 (Ala.Crim. App.1985); Reeves v. State, 456 So.2d 1156 (Ala.Crim.App.1984).
The appellant also filed a pro se brief in this case. We have reviewed his assertions in brief and find no basis of error to reversal contained therein.
The appellant's judgment of conviction and sentence are due to be, and the same are hereby, affirmed.
AFFIRMED.
All the Judges concur.