Affirmed; Opinion of August 30, 2007 Withdrawn; Corrected Memorandum
Opinion filed December 6, 2007








 

Affirmed;
Opinion of August 30, 2007 Withdrawn;
Corrected Memorandum Opinion filed December 6, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00570-CR

____________

 

CRUZ JOEL GARCIA, JR., Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 263rd
District Court

Harris County, Texas

Trial Court Cause No. 1005198

 



 

C O R R E C T E D   M E M O R A N D U M   O P I N I O N

The Court withdraws its opinion issued August 30, 2007,
because of a typographical error and issues this corrected opinion in its
place.








Appellant, Cruz Joel Garcia, Jr., was indicted with the
felony offense of capital murder.  He pleaded not guilty, and his case was
tried to a jury.  The jury found appellant guilty of capital murder and the
court assessed punishment at life imprisonment in the Institutional Division of
the Texas Department of Criminal Justice.  Appellant raises three issues on
appeal: 1) the court erred in denying his motion to suppress identification
testimony; 2) the court erred in not allowing the testimony of a defense expert
on eyewitness identification; and 3) the trial court erred in denying appellant=s request for
inclusion of an instruction on the lesser included offense of felony murder. 
Because we find that the court did not err in any of these instances, we affirm
the judgment of the trial court. 

Factual
Background 

On the night of May 19, 2001, a group of friends stood
outside of an apartment complex where one or two of them lived, drinking beer
and talking to one another.  As they stood outside, three young Hispanic males
approached, one with a shotgun, and the two unarmed individuals began robbing
the men.  The complainant, Juan Ledesma, did not immediately give up his
wallet.  The man with the shotgun, appellant, fired into the air and said, AThis is serious.@  When complainant
still would not give up his wallet, the two other robbers told appellant, AShoot him.@  Appellant then
lined the men up against the fence in front of the apartments and said, AI=m going to kill >em all.@  Then appellant
pointed the shotgun at complainant=s face and fired a
single shot.  The three robbers, including appellant,  ran from the scene. 
Complainant died from the wound inflicted by appellant. 








Police were called and began an investigation.  Based on a
tip, police put together a photographic lineup and showed pictures to the men
who had been robbed and had witnessed the shooting.  Of the men who were there,
two men, Rafael Pedroza and Alberto Ledesma, tentatively identified appellant
from the lineup.  Ledesma testified at the pretrial hearing that he had been 80
to 90 percent sure of his identification the first time he picked appellant
from the lineup.  A third witness, Antonio Ramos, positively identified
appellant from the photo array.  No other witness recognized any person in the
lineup.  From there, the case was set aside and no progress was made for two
years, at which point the investigation resumed.  The original lineup could not
be found, so a new lineup was made, using the same photos from the original. 
The lineup was again shown to the witnesses and the same witnesses once again
identified appellant.  Ledesma again tentatively identified appellant, stating
at the pretrial hearing that he was 80 to 90 percent sure of his identification
at the second lineup as well.  Ramos again made a positive identification of
appellant, and Pedroza could not identify anyone from the second photo lineup. 
At trial, the State called both Ramos and Ledesma, and both made in-court
identifications of appellant as the shooter on the night complainant was
killed.  

Analysis

I.        No Error
in Denying Appellant=s Motion to
Suppress

Appellant argues, in his first issue, that Ledesma=s second
out-of-court identification and his in-court identification were both tainted
by the fact that following the first and second photo lineups, Ledesma would
have seen evidence on the signature page that other witnesses had also
identified appellant.  Appellant contends that because these identifications
were tainted, the trial court erred in denying his motion to suppress all
subsequent identifications by Ledesma.

A.      Standard
of Review and Applicable Law








A conviction based on an out-of-court identification will
be set aside on the basis of an impermissibly suggestive pretrial
identification procedure only where the procedure was so impermissibly
suggestive as to give rise to a very substantial likelihood of
misidentification.[1]
 See Neil v.
Biggers, 409 U.S.
188, 198 (1972).  AIf the totality of the circumstances
reveals no substantial likelihood of misidentification despite a suggestive
pretrial procedure, subsequent identification testimony will be deemed >reliable,= >reliability
[being] the linchpin in determining the admissibility of identification
testimony.=@ Ibarra v. State, 11 S.W.3d 189,
195 (Tex. Crim. App. 1999) (quoting Webb v. State, 760 S.W.2d 263, 269
(Tex. Crim. App. 1988)).  

Five factors should be Aweighed against
the corrupting effect of any suggestive identification procedure in assessing
reliability under the totality of the circumstances@: (1) the
opportunity of the witness to view the criminal at the time of the crime; (2)
the witness=s degree of attention; (3) the accuracy of the witness=s prior
description of the criminal; (4) the level of certainty demonstrated by the
witness at the confrontation; and (5) the length of time between the crime and
the confrontation.  Biggers, 409 U.S. at 199B200.  We consider
these factors, issues of historical fact, deferentially, in a light favorable
to the trial court=s ruling.  Ibarra, 11 S.W.3d at
195.  The factors, viewed in this light, are then weighed de novo against the
corrupting effect of the suggestive pretrial identification procedure.  Id.
at 195B96.  

A defendant challenging the admissibility of identification
testimony on Due Process suggestiveness grounds has the burden to prove by
clear and convincing evidence that a witness=s identification
is unreliable.  Santos v. State, 116 S.W.3d 447, 451 (Tex. App.CHouston [14th
Dist.] 2003 pet. ref=d) (citing Delk v. State, 855
S.W.2d 700, 706 (Tex. Crim. App. 1993)).

B.      Identifications
Reliable Under Totality of Circumstances








Initially, we must determine if the procedures used were
impermissibly suggestive.  It appears that no test has been conceived to aid
courts in analyzing this issue.   Providing an opportunity for a witness to
discover if other witnesses have identified anyone in the same lineup appears
to be an impermissibly suggestive lineup procedure.  See, e.g., United
States v. Woolery, 735 F.2d 818, 820B21 (5th Cir. 1984)
(witness=s hearing his son,
another witness, identify appellant at the same lineup was one factor making
lineup impermissibly suggestive); Swicegood v. Alabama, 577 F.2d 1322,
1327 (5th Cir. 1978) (fact that witnesses had the opportunity to discuss the
lineup between their first and second viewings contributed to making lineup
impermissibly suggestive).  Impermissibly suggestive procedures that confirm a
witness=s choice are
disfavored for their tendency to reduce trustworthiness of subsequent
identifications.  See United States v. Moskowitz, 581 F.2d 14, 20 (2d
Cir. 1978); see also Burkett v. State, 127 S.W.3d 83, 88 (Tex. App.CHouston [14th
Dist.] 2003, no pet.) (holding that an officer=s indication to a
witness that she had a good memory after identifying the suspect was
sufficiently suggestive to continue to the second part of the due process
analysis).  Therefore, we hold that the procedures used in this case were
impermissibly suggestive.  

We now must analyze the Biggers factors to determine
whether the identification can be considered reliable under the totality of the
circumstances.  First, we examine the opportunity to view the appellant at the
time of the crime.  Ledesma testified that it was around 11:00 p.m. when the
robbery occurred, but when asked if there were lights so that the friends could
see each other and other people who might be around, he responded, AYes.@  The whole ordeal
lasted only two to three minutes.  He testified that the gunman came to within
five feet of him, and that when the gunman was standing where Ledesma could see
his face, the distance between them was no more than seven feet.  Ledesma said
he was able to see appellant=s face, although only briefly.  He
testified that when he saw the gunman=s face, the gunman
was standing directly in front of him, giving him a direct view of the front of
the gunman=s face.  Viewing this factor in the light most
favorable to the trial court=s ruling, we find Ledesma had sufficient
opportunity to view the gunman=s face at the time of the crime.  See
Ibarra, 11 S.W.3d at 195; Brown v. State, 29 S.W.3d 251, 255B57 (Tex. App.CHouston [14th
Dist.] 2000, no pet.) (holding opportunity to view burglar sufficient where
witness clearly saw burglar=s face during a sixty-second encounter). 








The second Biggers factor examines the witness=s degree of
attention.  A witness who is also a victim pays closer attention to events than
would a casual bystander.  See Barley v. State, 906 S.W.2d 27, 35 (Tex.
Crim. App. 1995); Cantu v. State, 738 S.W.2d 249, 253 (Tex. Crim. App.
1987).  Ledesma was one of several men who were being held at gunpoint and
robbed together.  He was in as much danger as his cousin, the complainant in
this case.  We, therefore, believe that Ledesma had a great deal of incentive
to pay attention.  

The next factor, and one that is also indicative of
attentiveness, is the accuracy of any prior description.  See Delk v. State,
855 S.W.2d 700, 707 (Tex. Crim. App. 1993) (stating that the amount of detail
given by the witness revealed her attentiveness).  Although Ledesma himself did
not remember giving a description to the police, Officer Riojas testified that
Ledesma described the gunman as being between 18 and 20 years of age, approximately
five feet six inches in height, with a thin build, medium brown skin, and short
black hair.  He was also perceptive enough to notice the type of gun used by
the gunman.  Appellant=s mother testified at trial that he is
actually five feet three inches tall,  has a light complexion, and at the time
of the robbery weighed between 128 and 135 pounds.  Photos in the record show
that appellant=s hair is dark, possibly black.  The differences in
testimonyCnamely height and complexionCare not
significant, and show that Ledesma=s description was
fairly accurate.  See Ibarra, 11 S.W.3d at 196 (a description  matching
appellant=s Ageneral appearance@ indicated
reliability, despite describing suspect as having mustache instead of full
beard);  Williams v. State, 985 S.W.2d 240, 242B43 (Tex. App.CBeaumont 1999, no
pet.) (holding that witness=s description of 6' or 6'2" and 200
pounds did not differ significantly from officer=s description of
appellant as 5'10" and 180 pounds).  








The fourth Biggers factor is the level of certainty
demonstrated by the witness at the confrontation.  As to his out-of-court
identification, Ledesma testified that he was 80 to 90 percent sure when he
chose appellant from the photo array.  Though not a positive identification,
this is a high degree of certainty.  Notably, this is the same degree of
certainty with which he identified appellant in the first lineup, before any
allegedly suggestive procedures.[2] 
As to his in-court identification, he testified that appellant was the gunman
without equivocation.  He also testified that he did not remember seeing Ramos=s signature on the
second photo array=s signature page, which indicates that his
certainty at the in-court identification was not based on the suggestive
procedures.  More important than his testimony that he did not remember Ramos=s signature is
Ledesma=s testimony that
he made both his out-of-court identification and his in-court identifications
because he remembered appellant, not because of seeing him in pictures or for
any other reason.  See Ibarra, 11 S.W.3d at 196 (identification based on
own observations rather than photos viewed as evidence of reliability);  Harris
v. State, 827 S.W.2d 949, 960 (Tex. Crim. App. 1992) (same); see also
Rojas v. State, 171 S.W.3d 442, 449 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d) (holding that witness=s statement that
he could identify appellant based on recollection, independent from photo
lineup, made in-court identification admissible).  

Finally, we consider the length of time between the crime
and the confrontation.  The length of time between the crime and the second
out-of-court photo lineup was approximately two years and three months.  The
time between the in-court identification and the crime was approximately five
years.  However, the first photo lineup, which was not the product of any
suggestive procedure, and at which Ledesma identified appellant with the same
80 to 90 percent certainty as he did at the second photo lineup, occurred only
eighteen days after the offense.  Furthermore, we note that the passage of a
long period of time does not necessarily Adetract from the
identification@ given the persuasiveness of other factors.  See
Delk, 855 S.W.2d at 707.  








Balancing the nature of the suggestive procedure against
Ledesma=s opportunity to
observe the gunman, his attention to detail, his largely accurate description
of appellant, high degree of certainty at all confrontations, and his testimony
that he chose appellant at the second photo lineup and in court because he
remembered him from 2001, not for any other reason, we hold that appellant did
not meet his high burden of showing by clear and convincing evidence a very
substantial likelihood of misidentification.  See Santos, 116 S.W.3d at
451.  We overrule appellant=s first issue.

II.       No Abuse
of Discretion in Refusing to Allow Expert to Testify

In his second issue, appellant contends that the trial
court abused its discretion in not allowing an expert witness for the defense
to testify as to eyewitness identification.  Dr. Steve Rubenzer, a forensic
psychologist, was prepared to testify as to the variables that affect the
reliability and accuracy of eyewitness identification.  The trial court ruled
that Dr. Rubenzer was insufficiently experienced or skilled to testify before
the jury.

Appellant argues that the court=s holding flies in
the face of the evidence because 1) Dr. Rubenzer had attended four seminars,
two-and-a-half days each, on eyewitness- identification, 2) he had read over
fifty recent studies and articles on the subject, and 3) his entire practice is
devoted to forensic psychology, which is a broad field encompassing eyewitness
identification.  Dr. Rubenzer also testified that he had previously been
qualified as an expert on eyewitness identification in two other trial courts. 
He has also written a single article published in two separate criminal defense
lawyer periodicals.  








However,  Dr. Rubenzer=s testimony also
shows that while he has read some fifty articles on eyewitness identification,
there are over 2,000 such published articles on the specific topic of
eyewitness identification.  Dr. Rubenzer has never done any research of any
kind in the field of eyewitness identification.  In fact, Dr. Rubenzer only
began to learn about eyewitness identification in 2001.  He earned his
doctorate in clinical psychology in 1990, and then worked as a forensic
psychologist for Harris County for fourteen years, during which time his main
job responsibilities were determining the competency and sanity of defendants
as well as general psychological assessment, neither of which relate to
eyewitness identification.  Dr. Rubenzer is an associate editor of a journal
called AAssessment,@ which is
unrelated to eyewitness identification.  Since 2004, Dr. Rubenzer has been in
private practice and lists a range of topics as his areas of expertise:
competency, insanity and criminal responsibility, detection of malingering of
mental illness, clinical assessment of personality, psychopathology and
intelligence, D.W.I. standardized field sobriety testing, assessment of risk
and dangerousness, eyewitness expert testimony, and false confessions.  Dr.
Rubenzer has published two books and several articles, and of his publications,
only a single article, published in a non-peer-reviewed journal, is related to
eyewitness identification.  

A.      Standard
of Review and Applicable Law 

Under Rule 702, the trial court, before admitting expert
testimony, must be satisfied that the witness qualifies as an expert by reason
of his knowledge, skill, experience, training, or education.  See Alvarado
v. State, 912 S.W.2d 199, 215B16 (Tex. Crim.
App. 1995).  The witness sought to be qualified must have a background tailored
to the specific area of expertise in which the expert desires to testify.  Vela
v. State, 209 S.W.3d 128, 133 (Tex. Crim. App. 2006). 








Because the possible spectrum of education, skill, and
training is so wide, a trial court has great discretion in determining whether
a witness possesses sufficient qualifications to assist the jury as an expert
on a specific topic in a particular case.  Rodgers v. State, 205 S.W.3d
525, 527B28 (Tex. Crim.
App. 2006).  Absent a clear abuse of that discretion, the trial court=s decision to
admit or exclude expert testimony will not be disturbed.  Wyatt v. State,
23 S.W.3d 18, 27 (Tex. Crim. App. 2000).  In considering whether a trial court
clearly abused its discretion in ruling on an expert=s qualifications,
appellate courts should consider three factors: (1) the degree of complexity of
the field of expertise (greater complexity requires better credentials); (2)
the degree of conclusiveness of the expert=s opinion (the
more conclusive, the more important his degree of expertise); and (3) the
centrality of the area of expertise to the resolution of the lawsuit (the more
dispositive the opinion is, the more important the expert=s
qualifications).  See Rodgers, 205 S.W.3d at 528.[3]     


B.      No Abuse
of Discretion  

Clearly, the evidence adduced at the hearing shows that Dr.
Rubenzer has some specific knowledge of eyewitness identification issues gleaned
from reading some articles and attending conferences.  However, the evidence
also shows that his background may not be sufficiently tailored to the area of
eyewitness identification.  Eyewitness identification is a small part of Dr.
Rubenzer=s wide-ranging
practice, and he has not performed any research or published on the topic in a
peer-reviewed publication.  He has read only approximately .0025% of all
published articles on eyewitness identification, and in his sixteen year career
has received only ten days of seminar education on the topic.  See Vela,
209 S.W.3d at 133. 

While eyewitness identification variables may not be very
complex, and Dr. Rubenzer=s testimony may not have been very
conclusive, we note that the issue of the accuracy of the eyewitness
identifications in this case, as with most eyewitness cases, is the central and
dispositive issue in the case.  Therefore, we do not think the trial court
clearly abused its discretion in holding that Dr. Rubenzer was not qualified to
testify at trial.  See Rodgers, 205 S.W.3d at 528.  We overrule
appellant=s second issue.








III.      No Error
Refusing Request for Instruction on Lesser Included Offense of Felony Murder

In his third and final issue, appellant contends that the
court erred in denying a request for a jury instruction on the lesser included
offense of felony murder.  The jury charge in this case provided two instructions
on murder.  The first allowed conviction if the defendant intentionally or
knowingly caused the death of an individual.  See Tex. Pen. Code ' 19.02(b)(1).  The
second allowed conviction if the defendant, intending to cause serious bodily
injury, intentionally or knowingly committed an act clearly dangerous to human
life that caused the death of an individual.  See id. ' 19.02(b)(2). 
Appellant=s trial counsel requested an instruction on felony
murder, which the trial court denied based on the court=s belief the
language was the same as the capital murder instruction.        

A.      Law of
Lesser Included Offenses

Texas courts use a two-pronged test to determine whether an
instruction on a lesser included offense must be given.  Hampton v. State,
109 S.W.3d 437, 440 (Tex. Crim. App. 2003).  First, the court determines
whether the lesser offense is a lesser‑included offense of the offense
charged as set forth in article 37.09 of the Texas Code of Criminal Procedure.[4] 
Moore v. State, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).  Second, the
court determines whether there is any evidence in the record that would permit
a jury rationally to find that if the defendant is guilty, he is guilty only of
the lesser offense.  Rousseau v. State, 855 S.W.2d  666, 673 (Tex. Crim.
App. 1993).         








B.      Second
Prong of Test Is Not Met

Felony murder is a lesser included offense of capital
murder.  Salinas v. State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005).[5] 
The only difference between the two is the culpable mental state required.  Id.
ACapital murder
requires the existence of an >intentional cause of death,= ... while in
felony murder, >the culpable mental state for the act of
murder is supplied by the mental state accompanying the underlying ...
felony....=@  Rousseau, 855 S.W.2d at 673
(quoting Rodriquez v. State, 548 S.W.2d 26, 29 (Tex. Crim. App.1977)). 
Thus, the first prong of the test is met. 

The second prong is not met, however, because a rational
jury could not find that if appellant is guilty, he is guilty only of felony
murderCin this case,
commission of a robbery, during which or while fleeing, he committed an act
clearly dangerous to human life that caused complainant=s death.  The
facts clearly show that appellant was prompted by his co-conspirators to shoot
complainant, that he lined the men up against the fence, as though he were
about to execute them, that he said, AI=m going to kill
them all,@ and that he stood a mere few feet away from
complainant and fired his shotgun directly at complainant=s head.  On these
facts, no rational juror could find that if appellant was guilty, he was guilty
only of felony murder (i.e., that he did not kill intentionally).  We overrule
appellant=s third issue. 








Conclusion


Having overruled each of appellant=s three issues, we
affirm the judgment of the trial court.  

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Corrected Memorandum Opinion filed December 6, 2007.

Panel consists of
Justices Anderson, Fowler, and Frost.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  If the State offers an in-court identification, the
question is whether the identification presents a very substantial risk of irreparable
misidentification.  See Simmons v. United States, 390 U.S. 377, 384
(1968).  Here, the State offered both an in-court identification and an
out-of-court identification; therefore, different standards technically apply. 
However, because we find that appellant does not meet the lower standard of
showing mere Asubstantial likelihood of misidentification@ as to either identification, we will not separately
analyze the reliability of the in-court and out-of-court identifications.  





[2]  We note that several cases from at least one other
jurisdiction suggest that where suggestive procedures had no effect on the
certitude of an identification, this is dispositive of the reliability
inquiry.  See, e.g., Jarrett v. Headley, 802 F.2d 34, 41B42 (2d Cir. 1986) (stating police suggestiveness does
not require the suppression of an identification if the witness was not thereby
influenced); United States v. Wong, 40 F.3d 1347, 1362 (2d Cir. 1994)
(same).  





[3]  We note that the State chose to brief this issue as
a determination of reliability.  See Vela, 209 S.W.3d at 131 (referring
to the three inquiries to be met before admitting expert testimony as 1)
qualification, 2) reliability, and 3) relevance).  Because both appellant and
the State confine their arguments to whether Dr. Rubenzer had sufficient
credentials to be allowed to testify, we analyze the issue as one of
qualification.  To the extent this issue could be analyzed under the
reliability inquiry, the outcome would be the same.   





[4]  Article 37.09 provides that an offense is a lesser
included offense if: 

(1) it is established by proof of the same or less
than all the facts required to establish the commission of the offense charged;


(2) it differs from the offense charged only in the
respect that a less serious injury or risk of injury to the same person,
property, or public interest suffices to establish its commission; 

(3) it differs from the offense charged only in the
respect that a less culpable mental state suffices to establish its commission;
or 

(4) it consists of an attempt to commit the offense
charged or an otherwise included offense. 

Tex. Code Crim. Proc. art. 37.09.





[5]  The definition of felony murder is under Texas Penal
Code section 19.02(b)(3).  It provides:

(b)  A person commits an offense if he:                                        

****

(3)  commits or attempts to commit a felony, other
than 

manslaughter, and in the course of and in furtherance
of the 

commission or attempt, or in immediate flight from the
commission 

or attempt, he commits or attempts to commit an act
clearly 

dangerous to human life that causes the death of an
individual.

Tex. Penal Code ' 19.02(b)(3).